## FORT SCOTT *v.* HICKMAN.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF KANSAS.

Submitted October 17, 1884.—Decided November 3, 1884.

The statute of the State of Kansas (Gen. Stat. of Kansas, ch. 80, art. 3, sec. 24, p. 634), providing that, in a case founded on contract, when "an acknowledgment of an existing liability, debt or claim" shall have been made, an action may be brought within the period prescribed for the same, after such acknowledgment, if such acknowledgment was in writing, signed by the party to be charged thereby, requires, as interpreted by the Supreme Court of Kansas, that the acknowledgment, to be effective, be made, not to a stranger, but to the creditor, or to some one acting for or representing him.

An acknowledgment cannot be regarded as an admission of indebtedness, where the accompanying circumstances are such as to repel that inference or to leave it in doubt whether the party intended to prolong the time of legal limitation.

A committee of a city council, appointed to consider the city indebtedness, made a report containing a statement of the assets and liabilities of the city, and including among the latter a certain issue of bonds called M. bonds. The report further proposed a plan of compromise to be made with the holders of city bonds, the proposal being made in the form of a circular which the committee recommended "to be sent to each person holding city bonds, except M. bonds, as to which we make no report." The circular, by its terms, purported to be addressed "to each person holding bonds of the city," and requested "each bondholder to express his views fully." The city council adopted the report of the committee, and ordered the circular to be sent to the holders of the city bonds ; and it was so sent to holders of bonds other than M. bonds, but not to holders of the latter : *Held*, That neither the note nor the circular was an acknowledgment of the M. bonds as a debt of the city, so as to take them out of the statute of limitations.

Where a Circuit Court of the United States, on the trial of an action at law before it, on the waiver of a jury, makes a special finding of facts, on all the issues raised by the pleadings, and gives an erroneous judgment thereon, which this court reverses, it is proper for this court to direct such judgment to be entered by the Circuit Court as the special finding requires.

This was an action brought by the defendant in error, in the Circuit Court of the United States for the District of Kansas, against the city of Fort Scott, in the State of Kansas, to recover the amount of principal and interest due on 27 bonds, for $500 each, issued by that city, 12 of which became due on July 1, 1873, and 15 on July 1, 1874. The bonds were coupon

bonds, with interest payable annually, on the 1st of July, at the rate of 10 per cent. per annum, and were dated July 1, 1871. Each bond contained the heading, "Special Improvement Bond of the City of Fort Scott, Kansas," and this statement : "Issued in accordance with sections 16 and 17 of an act of the Legislature of the State of Kansas, entitled 'An Act relating to the powers and government of cities of the second class, and to repeal certain sections of chapter 19 of the General Statutes of 1868, approved March 8th, 1871,' and in pursuance of an ordinance of the city of Fort Scott, entitled ' An ordinance ordering the grading and macadamizing, &c., of certain streets and parts of streets, approved May 19th, 1871.' Countersigned by the city treasurer, this twentieth day of September, 1871."

The suit was commenced July 1, 1880, and was tried by the Circuit Court without a jury. As to 11 of the 12 bonds, that court found that all the coupons on them had been paid on and before July 1, 1873, but no payment of principal or interest had been made upon any of them since that date, except as stated in its fourth finding. As to the 15 bonds, it found that all the coupons on them were paid on and before May 16, 1875, but no payment of principal or interest had been made upon any of them since that date, except as stated in its fourth finding. The remaining findings were as follows :

" 4th. The court further finds that, as to the remaining bond sued on herein, being bond number 78, it became due by its terms July 1st, 1873, and on and prior to that date all the interest coupons thereon had been paid ; that, on November 8th, 1875, a payment was made on said bond number 78, of the sum of $290, and the balance of said bond remained due and unpaid at the time of the commencement of this action ; that said payment upon bond 78 was made by Donnell, Lawson & Co., fiscal agents of the State of Kansas, upon the authority of certain letters sent them by J. H. Randolph, city treasurer of the defendant, written by him in the usual routine of his official duties, but without any special instruction or knowledge on the part of the city council of said city ; which said letters are as follows, to wit:

'FORT SCOTT, Ks., *June* 10, 1875.

Mess. DONNELL, LAWSON & Co., *New York.*

DEAR SIRS: Yours of the 2d inst. at hand. The coupons of our special improvement bonds are all retired except bonds Nos. 97 and 107 to 113; the last coupon on these Nos. (all past due) is not yet in; will give you statement of am't and Nos. of these bonds due and unpaid by next mail. · You may redeem any one of these bonds whenever this fund in your hands is sufficient to do so. My remittance of May 26th, of $245, was all to apply on coupons of bonds issued to the M., K & .T. R. R. Co., and not $70 of it for special im. fund, as you state you have credited, in your letter of June 1st. The Nos. of the bonds to which these coupons belong are 1 to 7, inclusive. You will please make the transfer of the $70 to your Fort Scott City coupon acc't. About what would our city funding bonds bring in your market, bonds running 10 years, int. payable s. a. at 10 per cent. p'r. annum?

Resp'y, yours,     J. H. RANDOLPH, *City Treasurer.*

'FORT SCOTT, Ks., *Aug.* 6th, 1875.

Mess. DONNELL, LAWSON & Co., *New York.*

GENTLEMEN: I give you below the Nos. of our special improvement bonds now ˉunpaid. Nos. 6 to 15, 17 to 22, 24, 30 to 39, 53 to 58, 60 to 80, 83 to 85, 97, 98, 99, and 104 to 115, in all 70 bonds of $500 each, all past due. I will be in New York last'of this month, and will ˙call and explain to you the situation in regard to these bonds, so you may understand the reason why they are not paid, and that owners of the same may govern themselves accordingly.

Very resp'y yours,     J. H. RANDOLPH, *City Treasurer.*

'FORT SCOTT, Ks., *Aug.* 11th, 1875.

Mess. DONNELL, LAWSON & Co., *New York.*

GENTLEMEN: I enclose you herewith d'ft for $500 to apply on interest due on Fort Scott City special improvement bonds. If not convenient to apply on interest use to˙ pay on bonds.

Resp'y yours,     ·     J. H. RANDOLPH.'

On November 8, 1875, said fiscal agents paid bond 77 of

this series, and said $290 on said bond 78, they being the only bonds presented to that date, which payments exhausted the funds in the hands of said fiscal agents. That the official accounts of the treasurer of said city contain the following entry of credit to himself: 'August 11th, 1875. By Donnell, Lawson & Co., to pay interest on special improvement bonds, $500,' which was the moneys remitted by said treasurer in the letter of August 11th, 1875. Said payments were reported by the city treasurer in his annual report and approved by the city council.

5th. The court further finds, that, in July, 1878, the defendant, the city of Fort Scott, Kansas, by its city council, referred the matter of its financial condition to the finance committee of said council, which committee made a report in writing to said council, on the 21st day of August, 1878, which report was duly adopted and spread in full on the records of the minutes of said council, and is as follows, to wit:

' *Council Proceedings, August 21st,* 1878.

Adjourned regular meeting.

Mayor Cohen in the chair.

The report of the finance committee on the matter of the city indebtedness was read, and on motion adopted and ordered placed on file. It is as follows:

*To the Hon. Mayor and Councilmen of the City of Fort Scott, Kansas :*

We, your committee on city indebtedness, met with and consulted B. P. McDonald, D. P. Lowe, J. S. McCord, J. D. McCleverty, and also J. D. Hill, W. J. Bowden, W. A. Cormany, members of the board of education of this city, whom the committee thought should be invited, and, after careful consideration, the joint committee unanimously agreed on the plan of compromise set forth in the following circular letter, which we recommend be sent to each person holding city and school district bonds, except Macadam bonds, about which latter we make no report:

CITY CLERK'S OFFICE, FORT SCOTT, KANSAS, *Sept. 3d*, 1878.

DEAR SIR: The city council of Fort Scott address this to each person holding bonds of the city of Fort Scott, Kansas, with a view to bring about such an amicable adjustment of the indebtedness of our city, if possible, as will be fair to the bond-holders in view of our circumstances, and at the same time be such an one as the city can reasonably expect to be able to meet.

Nearly all of our county, city, and school district indebtedness was incurred at or about the year 1870, which was what would be called our times flush, when money was plenty and property of ready sale at good figures. In 1870 the assessed valuation of all kinds of property in the city was $1,445,730, as shown by the tax roll, whil our assessed valuation for the year 1878 is only $814,457, being a decline in valuation of $631,273, or nearly one-half, a decline which cannot be accounted for upon the basis of the general decline in values, but is doubtless largely attributable to the excessive burden of our debt and taxation. For the year just past our levy for all funds in the city was 5.25 per cent., while this year, had an adequate levy been made, it would have been nearly 7 per cent., and this, too, without making any levy for sinking fund purposes to meet our railroad bonded indebtedness. A careful examination of our financial condition convinced us that to meet our indebtedness in its present form, including our share of the county and school district indebtedness, would, within two or three years, require a levy of 10 per cent., and should the extreme decline in our assessed valuation continue, the rate would exceed that figure.

Our assessed valuation of all kinds of property in the city, beginning with the year 1870, as shown by the tax roll, is as follows:

| | |
|---|---|
| 1870 | $1,445,730 |
| 1871 | 1,421,682 |
| 1872 | 1,382,950 |
| 1873 | 1,233,624 |
| 1874 | 1,386,294 |

| 1875 | $1,071,834 |
|------|-----------|
| 1876 | 958,896 |
| 1877 | 904,368 |
| 1878 | 814,457 |

The increase in valuation in 1874 is explained by the fact that nearly 250 acres of outlying additions were that year annexed to the city. In the face of this great decline in value, our indebtedness is rapidly maturing and is yet to be provided for.

The indebtedness of our county in railroad bonds is $300,000, of which $150,000 are in litigation, and upon which there is nearly $40,000 of an accumulation of unpaid interest, and all may yet be adjudged a valid indebtedness. The assessed valuation of the county, including the city, this year, is $3,509,164; the valuation of the city being about one-fourth of that, places one-fourth of the county's burden upon the city. A statement of our indebtedness, then, upon that basis, is as follows:

| | |
|---|---|
| One-fourth co. debt | $85,000 |
| City railroad debt | 100,000 |
| City school district bonds | 37,500 |
| City bridge and funding bonds | 41,500 |
| City special improvement bonds and accrued interest | 45,000 |
| Other sundry indebtedness, about | 6,000 |
| Total | $315,000 |

From this statement it will be seen, that the ratio of our total indebtedness to our assessed valuation is about 40 per cent.

Of our indebtedness, our school district, bridge, and funding bonds bear ten per cent. interest, and for these the city has had something in the shape of value received. In the matter of our railroad 7 per cent. bonds, however, both county and city, the universal sentiment of our people is that we have not been rightly treated. Each of the railroad companies promised that their machine shops should be built and located in Fort Scott, the M., K. & T. made a written contract to that effect, and the

city railroad debt of $100,000, and a county railroad debt of $150,000, was created. The bonds were delivered, but the railroad companies have built their shops elsewhere. The M., K. & T. Railroad, after receiving $100,000 of city and $150,000 of county bonds, not only failed to comply with its contract, but started a new town, built its machine shops there, and has since lent every effort of its great power to foster a rival town within fifty miles of this place.

Had the railroad companies fulfilled their pledges, Fort Scott nor Bourbon County would not now be asking leniency at the hands of their creditors, our debts would not have been out of proportion to our valuation, our people would have been satisfied, our town and county prosperous.

We have incurred the debt, we have failed to receive the benefits. Both of the railroad companies are bankrupt, and we are without remedy or hope of redress.

A strong sentiment has always existed in favor of utterly repudiating our railroad debt, and now that the time approaches for levying a sinking fund tax to pay that debt, this sentiment increases. The present bondholders may be blameless as to the bad faith of the railroad companies, but the result to us is all the same, and our debt burden in no wise relieved by that fact.

Our inability to pay such a debt seems apparent, and sooner or later we know that we must fail. An increase in taxation means a decrease in value, the refusal of the tax-payer to pay, the driving out of capital already invested, and the turning away of those who would otherwise settle here. Realizing this, we have this year omitted to make a levy for debt purposes, either principal or interest, and hope, by a statement of the facts and of our circumstances, together with the safeguards which we propose for the future, to effect a compromise, which, while burdensome still to us, yet we know we can meet, and at the same time give to the bondholder as high a marketable value as he now has in the paper he now holds. We feel, however, that a difference ought to be made in the two classes of bonds, and hence we propose to refund the city and school district debt upon the following terms: The city railroad and ma-

chine shop 7 per cent. bonds to be refunded at 50 cts. on the dollar, into a 30-year 5 per cent. bond, payable at any time after 10 years, and the school district funding and bridge 10 per cent. bonds to be refunded into a like bond, at the rate of 75 cts. on the dollar of the present amount of bonds outstanding. This would make the amount of our city and school district debt about 20 per cent. of our valuation, leaving out of consideration our proportion of the county indebtedness, which, if considered, would still leave our debt about 30 per cent. of the valuation.

To effect this compromise we will need new legislation, and, in obtaining this, we propose and suggest the following provisions of law, as a protection to the holders of the compromise bonds against a subsequent over-issue, which might compel a new compromise, to wit:

A tax levy for interest to be made annually, sufficient to pay the interest then due. At the end of ten years, one-twentieth, or 5 per cent., of the principal to be collected, and for each year thereafter, until the whole refunded debt is paid or liquidated.

Making any officer who shall prevent such levy, personally liable to any bondholder for the amount then due, to be recovered in a civil action; making it a misdemeanor, punishable by fine and imprisonment, for any officer to divert any portion of the funds so collected to any other purpose than the payment of these bonds and interest, the fine to be not less than the sum so diverted.

Making a provision that the aggregate amount of our bonded indebtedness, when the now proposed compromise is effected, shall never be exceeded, until the entire amount of the compromise bonds shall be fully paid, and making any bonds that might be issued in excess of that amount absolutely null and void.

The bonds issued under such a law as this would be absolutely protected against an over-issue in the future, and, with this safeguard, would sell, in the aggregate, for more dollars and cents than the entire amount of our present bonded indebtedness.

In response to this, we ask each bondholder to express his views fully, stating the amount and kind of bonds he holds; and we sincerely hope that a compromise can be fully agreed upon by the time our legislature meets in January next, so that the proper legislation may be obtained, and the refunding bonds issued in time for the making of a levy in 1879.

By order of the city council of the city of Fort Scott, September 3d, 1878. ——— ———, *City Clerk.*'

At said meeting of August 21st, 1878, said city council also adopted the following motion, as appears by said records :

'On motion, the city clerk was instructed to have one hundred copies printed of the circular letter, with the report of the finance committee on our indebtedness, as the city attorney may direct, to be sent to the holders of our city bonds.'

6th. That, under date of September 3d, 1878, the city clerk of said city caused to be printed one hundred copies of said circular letter, each being printed with a dotted head-line in which to write the name of the person addressed, and sent a copy of the same to each of the holders of the bonds of said city except to the holders of said special improvement or Macadam bonds, but did not send said circular to this plaintiff, nor to any agent or representative of his, nor to any other holder of said special improvement or Macadam bonds.

The reason why said city clerk did not send any of said circulars to any of the holders of said special improvement or Macadam bonds was because of the directions to that effect made in the adopted report of the finance committee of said city council, as set forth in finding No. 5 herein. Each of the circulars so sent out by said city clerk were signed by him in writing, and had the name of the person to whom sent written in the dotted head-line thereof. Some persons holding bonds of said city, other than said special improvement or Macadam bonds, did receive copies of said circular in which no name was written in said dotted head-line, but were signed by said city clerk.

7th. That, in 1878, and after September 3d, one Thomas W. Marshall, of Westchester, Pa., where plaintiff resided, who held some of the bonds of said city other than said special improve-

ment or Macadam bonds, received one of said circulars, which he showed to plaintiff, which was signed by said city clerk in writing, over the words 'city clerk' at the end, and one H. Burkhalter, at Westchester, Pa., who also held some of the bonds of said city other than said special improvement or Macadam bonds, received one of said circulars in 1878, which he gave to plaintiff. Said circular was also received by other persons residing at Westchester, Pa., who held bonds of said city other than said special improvement or Macadam bonds.

8th. That the class of bonds sued on herein are described on their face as 'special improvement bonds,' but were commonly called 'Macadam bonds' by the holders thereof, and by the officers of said city, and were issued by said city in payment for macadamizing certain streets in said city."

On the foregoing findings of fact, the court held, as matter of law, that the plaintiff was entitled to recover on the bonds $26,385.23, and to have judgment accordingly, and judgment was entered for that amount, to bear interest at the rate of 10 per cent. per annum. The defendant brought this writ of error.

*Mr. J. D. McCleverty* for plaintiff in error.

*Mr. S. E. Brown* and *Mr. Wayne McVeagh* for defendant in error.—I. The acknowledgment was sufficient. *Elder* v. *Dyer*, 26 Kan. 604, overruling *Hanson* v. *Towle*, 19 Kan. 273, relied upon by counsel for plaintiff. If the bonds referred to in the circular were other than the bonds sued upon, the burden of proof was on plaintiff in error to show it. *Whitney* v. *Bigelow*, 4 Pick. 507. See also *Argus Company* v. *Mayor of Albany*, 55 N. Y. 495, Folger, J.—II. The acknowledgment was so made as to revive the cause of action. The circular, though mailed to certain individuals, was addressed to all bondholders. Under these circumstances the ownership of the bond is the criterion by which to ascertain the person to whom the notice applies. See the New York case above cited.—III. The question of the sufficiency of an acknowledgment is one of general jurisprudence. In determining it Federal courts are independent

of the constructions by State courts.  *Delmar* v. *Insurance Co.*, 14 Wall. 665; *Swift* v. *Tyson*, 16 Pet. 1; *Watson* v. *Tarpley*, 18 How. 520; *Venice* v. *Murdock*, 92 U. S. 494.

Mr. Justice Blatchford delivered the opinion of the court. He stated the facts in the foregoing language and continued :

The declaration of the plaintiff avers the adoption by the city council of the motion of August 21, 1878, and sets forth a copy thereof and of the circular letter, and alleges that one of the circulars was sent to the plaintiff, and one to each of the other holders of the defendant's bonds ; that thus the defendant fully acknowledged and recognized the plaintiff's bonds as valid and subsisting obligations of the defendant; and that, on the 8th of November, 1875, the defendant recognized the existence and validity of the plaintiff's bonds by paying to him that day $290 on account thereof.  The answer avers that the $290 was paid and credited wholly on bond No. 78 ; that there is due on that bond $434, which sum the defendant offers to pay and brings into court; that more than five years elapsed after the maturity of the other bonds before this suit was brought, and it is barred by the statutes of limitation of Kansas; that the defendant never acknowledged or recognized the plaintiff's bonds as subsisting obligations, as alleged in the declaration ; and that the circular was never sent to the plaintiff by the city, or by its clerk, or by any of its officers, and the plaintiff never received it from the city, or from any party on behalf of the city.  To this answer there is a reply containing a general denial.

The statute of Kansas in force when this suit was commenced (Gen. Stat. of Kansas, ch. 80, art. 3, sec. 18, sub. 1, p. 633) provided, that an action on any agreement, contract or promise in writing could only be brought within five years after the cause of action accrued, and not afterwards.  Consequently, this suit was barred as to all the bonds, unless saved under the following provisions of the statute.

" In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same,

shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment, or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby." Id. sec. 24, p. 634, 635.

The construction of section 24 by the Supreme Court of Kansas, in *Elder* v. *Dyer,* 26 Kansas, 604, is that a case may be taken out of the operation of section 18, in three ways: (1.) By the payment of part of the principal or interest; (2.) By an acknowledgment in writing of an existing liability, debt or claim, signed by the party to be charged; (3.) By a promise of payment in writing, signed by the party to be charged; that it is not necessary all these things should co-exist, but only requisite that one of them should exist; and that it is not necessary the acknowledgment should amount to a new promise. But it is also held by the same court, in decisions made prior to August, 1878, that the acknowledgment, to be effective, must be made, not to a stranger, but to a creditor, or to some one acting for or representing him. *Sibert* v. *Wilder,* 16 Kansas, 176; *Schmucker* v. *Sibert,* 18 Kansas, 104; *Clawson* v. *Mc-Cune's Adm'r,* 20 Kansas, 337.

In the present case, the Circuit Court finds that the committee, in its report, recommended that the circular letter should "be sent to each person holding city and school district bonds, except Macadam bonds;" that the report stated that the committee made no report about Macadam bonds; that, on the report, the city council adopted a motion instructing the city clerk to have 100 copies printed of the circular letter, with the report, to be sent to the holders of the city bonds; and that the clerk caused to be printed 100 copies of the circular letter, and sent a copy of the same to each of the holders of the bonds of the city, except to the holders of the special improvement or Macadam bonds, but did not send the circular to the plaintiff, or to any agent or representative of his, or to any other holder of the special improvement or Macadam bonds. It is not found that any copy of the circular was received from the city, or from any one acting for it, by any holder of any Macadam bond or his agent or representative. The recom-

mendation of the committee, and its statement that it made no report about the Macadam bonds, and the fact that the circular letter offers no compromise as to those bonds, was a sufficient reason for not communicating with the holders of those bonds. In this connection, it may be observed, that by the report of the case of *United States* v. *Fort Scott*, 99 U. S, 152, it appears that in that case, the city of Fort Scott, at October Term, 1878, contested in this court, its obligation to impose a tax on all the taxable property of the city to pay like bonds of the same issue, claiming that it was bound to levy a tax only on property benefited, and that this court reversed the decision of the Circuit Court of the United States for the District of Kansas, which had decided in favor of the city, and against a holder of Macadam bonds, as to that question. That decision by this court was announced after the report of the committee was made, and after the date of the circular letter.

It is plain that the city made no acknowledgment to the plaintiff. It held no communication with him. It sent no copy of the circular letter to him. It intentionally refrained from doing so. It had a cogent reason for refraining, in the decision which had been so made in its favor. He received no circular letter from the city. Nor did the exhibition to him of the circular letter by persons who held other bonds than Macadam bonds amount to an acknowledgment by the city to him. The circular letter states that the city council addresses it to each person holding bonds of the city, but it also states that this is done with a view to a compromise, and then it proposes compromises as to other bonds, not including the Macadam bonds. So, also, the circular letter, at its close, asks that each bondholder will express his views fully, stating the amount and kinds of bonds he holds. But this applies, necessarily, only to those who hold bonds which are to be compromised and refunded. There is nothing in the circular letter which makes, or which evinces any intention of making, an acknowledgment to holders of Macadam bonds. In view of all this, the placing in the list, under the heading " A statement of our indebtedness," of the item, " City special improvement bonds and accrued interest, 45,000," cannot be held to amount to an ac-

knowledgment to the plaintiff of any then existing liability to him on the Macadam bonds he held. It was merely a statement that the city had issued that amount of special improvement or Macadam bonds, which it classed generally as "indebtedness," which others might claim was valid indebtedness against it, but which it carefully omitted from any proposal of compromise, and said no more about in the circular.

Although an acknowledgment need not, under the Kansas statute, amount to a new promise, yet the rule is applicable, that an acknowledgment cannot be regarded as an admission of indebtedness, where the accompanying circumstances are such as to repel that inference, or to leave it in doubt whether the party intended to prolong the time of legal limitation. *Roscoe* v. *Hale*, 7 Gray, 274.

Nor is there any ground for holding that what was entered upon the records of the city council is to be regarded as having been addressed to all the holders of bonds, including the plaintiff, and as having been in that way a sufficient acknowledgment to him, without the sending to him of a copy of the circular letter. For, that record states distinctly, that no report is made about Macadam bonds, and that the circular letter is not to be sent to their holders; and the observations before made as to the contents of the circular letter, and as to the circumstances attending what is said in it about the indebtedness on the Macadam bonds, apply with even more force to this branch of the case. The record, taken as a whole, did not amount to an acknowledgment to the plaintiff, as a holder of Macadam bonds. It is not found that the plaintiff ever knew of the record till after he brought this suit.

The settled doctrine in Kansas, and the weight of authority elsewhere, is, that statutes of limitation are statutes of repose, and not merely statutes of presumption of payment. Therefore, to deprive a debtor of the benefit of such a statute, by an acknowledgment of indebtedness, there must be an acknowledgment to the creditor as to the particular claim, and it must be shown to have been intentional. *Roscoe* v. *Hale*, before cited. "An acknowledgment of an existing liability, debt or claim," within the meaning of the Kansas

statute, implies a meeting of minds, the right of the creditor to take what is written as an acknowledgment to him' of the existence of the debt, as well as the intention of the debtor, as deduced from the contents of the writing and all the facts accompanying it, to make such acknowledgment. In *Wetzell* v. *Bussard*, 11 Wheat. 309, 315, Ch. J. Marshall said: "An acknowledgment which will revive the original cause of action must be unqualified and unconditional. It must show positively that the debt is due in whole or in part." To the same effect are *Bell* v. *Morrison*, 1 Pet. 351, 362, and *Moore* v. *Bank of Columbia*, 6 Pet. 86, 92. In *Barlow* v. *Barner*, 1 Dillon, 418, this statute of Kansas was under consideration by Mr. Justice Miller and Judge Dillon, and the court said: " Courts, by their decisions as to the effect of loose and unsatisfactory oral admissions and new promises, had almost frittered away the statute of limitations, and, to remedy this, statutes similar to the one in force in this State have been quite generally enacted. The statute of Kansas requires the acknowledgment to be in writing and signed by the party, and the acknowledgment must be of an existing liability with respect to the contract upon which a recovery is sought."

The statement of the city treasurer to the agents of the city in New York, in his letter of August 6, 1875, that special improvement bonds of certain numbers, which included those now sued on, were then unpaid, can avail nothing, for it was not a letter to the plaintiff or to his agent. The same remark is true as to the letter of August 11, 1875, and it remits $500 to apply on Macadam bonds generally.

As to the payment of the $290, it was paid on bond No. 78 only, as is found, no others of the bonds sued on having been presented to that date. It was not a payment on any other bond or on the bonds as a whole.

It follows, from these considerations, that the conclusion of law made by the Circuit Court on the facts found was erroneous. It ought to have rendered judgment for the defendant, except as to bond No. 78. Its special finding of facts is, under § 649 of the Revised Statutes, equivalent to the special verdict of a jury, *Norris* v. *Jackson*, 9 Wall. 125 ; *Copelin* v. *Insurance*

*Co.,* 9 Wall. 461, 467; *Insurance Co.* v. *Folsom,* 18 Wall. 237, 249; *Retzer* v. *Wood,* 109 U. S. 185; and, as such special finding covers all the issues raised by the pleadings, this court has the power, under § 701 of the Revised Statutes, to direct such judgment to be entered as the special finding requires. In cases like the present one, the proper practice is to direct a judgment for the defendant, instead of awarding a new trial. *National Bank* v. *Insurance Co.,* 95 U. S. 673, 679; *Fairfield* v. *County of Gallatin,* 100 U. S. 47; *Wright* v. *Blakeslee,* 101 U. S. 174; *People's Bank* v. *National Bank,* 101 U. S. 181; *Warnock* v. *Davis,* 104 U. S. 775; *Lincoln* v. *French,* 105 U. S. 614; *Ottowa* v. *Carey,* 108 U. S. 110; *Kirkbride* v. *Lafayette Co.,* 108 U. S. 208; *Retzer* v. *Wood,* 109 U. S. 185; *Canada Southern Railroad Co.* v. *Gebhard,* 109 U. S. 527; *East St. Louis* v. *Zebley,* 110 U. S. 321. The trial being without error, if the finding is sufficient, the same judgment is to be given as would be given on a special verdict. Where the special finding embraces only a part of the issues, as in *Ex parte French,* 91 U. S. 423, a different rule prevails. Accordingly,

*The judgment of the Circuit Court is reversed, and the case is remanded to that court, with direction to enter a judgment for the plaintiff, on bond No. 78, for $500, with proper interest thereon, less a credit on said bond, of $290, of the date of November 8, 1875; and, as to the other bonds sued on, to enter a judgment for the defendant, with costs.*