# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## ROWE v. MARCHANT.

June 13th, 1889.

GIFTS—*Delivery—Statute of limitations—New promise—Case at bar.*—R. and M. resided together. M. held bonds on R. which were barred by the statute of limitations. R. supposing M. to be *in extremis*, took and destroyed the bonds. M. recovering, R. acknowledged that he destroyed the bonds, and that they were unpaid, and stated their amounts. HELD: (1) There was no such delivery as constituted a gift. *Yancey* v. *Field*, 85 Va., 756. (2) The acknowledgment implied a promise to pay the bonds. *Aylett* v. *Robinson*, 9 Leigh, 45.

Heard at Richmond. Decided at Wytheville.

Appeal from decree of circuit court of Gloucester county. rendered March 11, 1887, in a suit wherein Thomas Marchant was complainant and Thomas B. Rowe's administrators were defendants. The decree being adverse to the administrators they appealed. Opinion states the case.

*Donovan & Jones*, for the appellants.

*H. R. Pollard*, for the appellee.

LACY, J., delivered the opinion of the court.

The bill was filed in this suit by the appellee against the appellants, as the administrators of Thomas B. Rowe, to collect certain debts claimed against the said estate by the plaintiff,

and to have a settlement of the estate in their hands for the benefit of the plaintiff and all other creditors who should come in on the usual terms. The answer denied the existence of any debts, admitting that the debts claimed once existed, but only as advancements, and alleging that they were barred by the statute of limitations. The case appears to be as follows: Marchant held the bonds of Rowe as follows: Bond dated April 6, 1854, for the sum of $1,214 38; another bond of $500, dated October 2, 1854; $653 92, January 10, 1856; and $1,200, due by bond dated September 17, 1849; and $1,000, due by bond dated 24th of March, 1880, and payable on demand; and $1,000, due by bond dated 6th of October, 1880. Rowe was about 60 years of age and the son-in-law of Marchant, who was about 85 years of age. Rowe was an inmate of Marchant's family, and an intimate friend. Marchant was taken sick, and his disease developed until his life was dispaired of, when Rowe, knowing of the whereabouts of these bonds, got them out from among Marchant's papers, and destroyed them, thinking Marchant would certainly die. But Marchant got well, and missed his bonds, and subsequently Rowe confessed the foregoing, and offered to renew them, and a difficulty grew up between them because of the destruction of these bonds by Rowe. Mr. W. W. Woodward, a lawyer and mutual friend, settled the difficulty as follows: Marchant had preserved in his memorandum-book a list of these bonds in dispute, thus: " Amount of bond due 6th of April, 1854, $1,214 37; amount of bond due 2d of October, 1854, $500; amount of bond due 1st January, 1856, $653 92; amount of bond due 17th September, 1849, $1,200." Under this was written by Rowe: "June 14th, 1882. The four entries above written, of dates and amounts of money due by me to Thomas Marchant, are correct. These bonds were in my possession, and while in my possession destroyed by me without the knowledge of the said Thomas Marchant, but were never paid by me.—T. B. ROWE. Witness: W. W. WOODWARD." And then Thomas Marchant

gave to Rowe the following paper: "June 14th, 1882.—I, Thomas Marchant, of Gloucester county, in the state of Virginia, do hereby release and quit claim to all interest due me by Thomas B. Rowe on four bonds—to wit, a bond for $1,214 38, dated April 6th, 1854; a bond for $653 92, dated 1st of January, 1856; and a bond for $500, dated 2d October, 1854; and a bond for $1,200, dated September 7th, 1849—it being my intention only to charge him with the principal sums of said bonds in my will. THOS. MARCHANT." These papers, constituting the settlement, being mutually exchanged, civil relations were restored between the parties. Rowe died, and in 1885, Marchant still living, this suit was brought by him as stated.

The defence is, first, that these bonds were given by Marchant to Rowe as advancements; secondly, that they are barred by the statute of limitations.

As to the first, it is not pretended that any possession of these bonds ever passed with the alleged promise to give them by charging them in the will. They were unlawfully taken by Rowe, while Marchant was lying helpless, and supposed to be dying; and Rowe excuses himself for this act, when admonished of its enormity, by saying that Mr. Marchant had promised to give him these bonds in his will, and he knew he did not have a will, and thought he was dying, and did not think it was wrong. This was condoned upon such restitution as has been mentioned. Whereupon Marchant gave him the accrued interest—a large sum—and announced his purpose of not charging him in his will with any interest—" only with the principal of these bonds." This may have been intended by Marchant as a promise to give him by his will all interest which might accrue, but, however that was, the will was never made, and Marchant, living, demands payment of the bonds alleged to have been given to Rowe.

That there was no valid and binding gift is clear. Our statute provides that no gift of any goods and chattels shall be

valid, unless actual possession shall come to and remain with the donee or some persons claiming under him. And, if the donor and donee reside together at the time of the gift, possession at the place of their residence shall not be sufficient possession, within the meaning of this section. Code 1873, ch. 112, sec. 1; Code 1887, sec. 2414. As to what constitutes a sufficient delivery of possession, I refer to the opinion of Lewis, P., in the late case of *Yancey* v. *Field*, in 85 Va., where the subject is fully treated. This case has been so recently decided here, the opinion having been rendered February 14th of the present year, that .it is unnecessary again to discuss the question. In this case there was really no gift of these bonds, but a gift of accrued interest, and a distinct refusal to give the bonds. There was an intention expressed to give the interest in the will, but the will has not been made, and, by the mutual understanding of the parties, the whole subject was retained under the control of the supposed donor. There is no valid ground upon which Marchant can be claimed to have given these bonds to Rowe. Rowe took possession of them without authority, while Marchant was supposed to be dying, but this act Marchant repudiated when he got well, and compelled from Rowe all the restitution he desired.

As to the second contention, that the bonds are barred by the statute of limitation, we will observe that the acknowledgment of Rowe is claimed to have taken these bonds out of the bar of the statute. By the eighth section of chapter 146 of the Code of 1873, 20 years is the limitation prescribed as to these bonds, and this period has elapsed, unless the statute is saved by the acknowledgment of June 14, 1882. As to this, the tenth section of the same chapter provides: "If any person, against whom the right shall have so accrued on an award, or on any such contract [referring to the eighth section], shall, by writing signed by him or his agent, promise payment of money on such award or contract, the person to whom the right shall have. so accrued, may maintain an action for the

money so promised, within such number of years after the said promise as it might originally have been maintained within, upon the award or contract, and the plaintiff may either sue on such promise or on the original cause of action; and, in the latter case, in answer to a plea under the eighth section, may, by way of replication, state such promise, and that such action was brought within the said number of years thereafter; but no promise, except by writing as aforesaid, shall take any case out of the operation of the said eighth section, or deprive any party of the benefit thereof. An acknowledgment in writing as aforesaid, from which a promise of payment may be implied, shall be deemed to be such promise in the meaning of this section."

The acknowledgment in this case is written under a statement of the bonds, dates, and amounts, and is that "the four entries above written, of dates and amounts of money due by me to Thomas Marchant, are correct," and that the bonds themselves, by which this was evidenced, had been destroyed by him, without the knowledge of Thomas Marchant, and that the said amounts had never been paid. At the same time he received a gift of about $4,000 of interest from Marchant. That the intention of the parties was mutually to set up these lost bonds, and to promise to pay them, cannot be doubted. The actual writing is a statement of a particular debt, its date, and its amount, and an acknowledgment by Rowe that this particular amount of money is due by him to Marchant. This was such an acknowledgment as implies a promise to pay. There could have been no other object in the writing. It is a distinct and unequivocal acknowledgment of the debt as still subsisting as a personal obligation of the debtor. As was said by Judge Parker in *Aylett* v. *Robinson*, 9 Leigh, 45: "The promise or acknowledgment, to take the case out of the statute, must be an express promise, or such an acknowledgment of a balance due, unaccompanied by reservations or conditions." By Chief Justice Marshall in *Clementson* v. *Williams*, 8 Cranch,

72: "The acknowledgment must go to the fact that it is still due." To revive a debt by a new promise, the new promise may be either express or implied, and an implied promise is created by a clear and unqualified acknowledgment of the debt. Ang. Lim., 240.

This court, in a late case, reported in 32 Gratt., 807 (*Dinguid* v. *Schoolfield*), said: "There is no doubt the plaintiff, to maintain the issue on his part, was bound to prove the promise alleged in his replication (the new promise). He was not required to prove an express promise. It was sufficient for him, under the statute, to establish an acknowledgment in writing, from which a promise in writing might be implied. * * * Such acknowledgment, to be effectual, must not consist of equivocal, vague, and indeterminate expressions, but ought to contain an unqualified and direct admission of a previous subsistory debt which the party is liable for and willing to pay." *Bell* v. *Morrison*, 1 Pet., 351, 362. As was said by Tindal, C. J., in *Linsell* v. *Bonsor*, 2 Bing. N. C., 241; 29 E. C. L., 519: "A distinct and unqualified acknowledgment would have the same effect as a promise, because from such an acknowledgment the law implies a promise to pay." If there be an unequivocal admission that the debt is still due and unpaid, unaccompanied by any expression, declaration, or qualification indicative of an intention not to pay, the state of facts out of which the law implies a promise, is then present, and the party is bound by it. Johnson, J., in *Young* v. *Monpoey*, 2 Bailey, 278. See *Bangs* v. *Hall*, 2 Pick., 368; *Moore* v. *Bank*, 6 Pet., 86; *Bell* v. *Morrison, supra; Bell* v. *Crawford*, 8 Gratt., 110, and authorities there cited; *Fort Scott* v. *Hickman*, 112 U. S., 150, 5 Sup. Ct. Rep., 56; 1 Greenl. Ev., 286, 290; *Walsh* v. *Mayer*, 111 U. S., 31, 4 Sup. Ct. Rep., 260; *Shepherd* v. *Thompson*, 122 U. S., 231, 7 Sup. Ct. Rep., 1229; *Bailey* v. *Crane*, 21 Pick., 323; *Russell* v. *Copp*, 5 N. H., 154; *Head* v. *Manner*, 5 J. J. Marsh, 255; *Peebles* v. *Mason*, 2 Dev., 367; *Sutton* v. *Burruss*, 9 Leigh, 381.

The decree of the circuit court of Gloucester county, of March 11, 1887, is in accordance with the foregoing well-settled principles, and will be affirmed. There is no error in the assigned error of the counsel for the appellee, because of the failure of the court to include in its decree the $700 91 reported in the third alternate statement. This amount is reported in favor of J. R. Marchant, and not of Thomas Marchant, and was therefore properly excluded from the amount decreed in favor of the latter. Upon the whole case we think there is no error in the decree complained of, and the same must be affirmed.

FAUNTLEROY, J., dissenting, said:

I dissent from the opinion of the majority of the court in this case. The facts, as disclosed by the record, are as follows: Thomas Marchant, the appellee here, an old resident of Gloucester county, Virginia, over 83 years of age, had three children, viz.: John H. Marchant, James R. Marchant, and Rosa Ellen Marchant; and he was the owner of a considerable estate, real and personal, and was free from debt. John H. Marchant died in 187–, leaving children; James R. Marchant is living, and Rosa Ellen Marchant married Thomas B. Rowe (appellant's intestate) June 4th, 1850, and she died the 30th of January, 1867, leaving her said husband and two children, viz.: a daughter, M. Ora (now the wife of W. D. Hudson), and a son, T. Walter Rowe, the appellants here. Thomas B. Rowe never married again after the death of his said wife, but continued to reside about four miles from his father-in-law, Thomas Marchant, with whom he continued a close, cordial and kindly intimacy and constant intercourse from the day of his marriage with Rosa Ellen, the daughter of said Thomas Marchant, in 1850, up to the event of the death of the said Thomas B. Rowe, on the 15th of May, 1885, with one short suspension and slight interruption in 1882.

Thomas Marchant had held four bonds of his said son-in-law, Thomas B. Rowe, payable to him, viz.: one dated and due 17th September, 1849, for $1,200 00; one dated and due 6th April, 1854, for $1,214 38; one dated and due 2d October, 1854, for $500 00, and one dated and due 1st January, 1856, for $653 92—aggregating $3,568 30. These said four bonds came into the possession of Thomas B. Rowe, who destroyed them without the knowledge of Marchant. In 1882, Marchant, being dissatisfied and displeased because of the destruction of the said four bonds, held a conference, at his own house, on June 14th, 1882, with the said Thomas B. Rowe, in the presence of a mutual friend, W. W. Woodward; at which conference the matter was satisfactorily explained, and was finally adjusted by two papers drawn up by Woodward, at the same time and date, one of which was signed by Rowe and delivered to Marchant, and the other was signed by Marchant and delivered to Rowe, Woodward witnessing both papers. The dates and amounts of the said four bonds were written in a memorandum book kept by Marchant, and the writing was made under the said memorandum, and was signed by Rowe, as follows, viz.:

"June 14th, 1882. The four entries above written of dates and amounts of money due by me to Thomas Marchant are correct. These amounts were evidenced by bonds. These bonds were in my possession and, while in my possession, destroyed by me, without the knowledge of said Thomas Marchant; but were never paid by me.        Thomas B. Rowe."

The paper signed by said Thomas Marchant is as follows, viz.:

"June 14, 1862. I, Thomas Marchant, of Gloucester county, in the state of Virginia, do hereby release and quit claim to all interest due me by Thomas B. Rowe on four bonds, to wit: a bond for $1,214 38, dated 6th April, 1854; a bond for $653 92, dated 1st January, 1856; and a bond for $500 00, dated 2d October, 1854; and a bond for $1,200 00, dated 17th

September, 1849—it being my intention only to charge him with the principal in my will. THOMAS MARCHANT."

The *status quo ante*—as to the pre-existence of these destroyed bonds—being thus established, Marchant's displeasure was wholly allayed, and the cordial and affectionate relations between him and Rowe were fully restored, and continued to Rowe's death. They lived near to each other, and Rowe was often and much at Marchant's house, and the attachment between them was strong. Marchant himself says, in his statement in this suit, that he always regarded Rowe as an "honest and excellent good man up to the time of his death. That there was a *slight misunderstanding* between him and Thomas B. Rowe in reference to the four bonds in controversy in this suit; but it was settled by the execution of two papers, drawn by W. W. Woodward, Esq., and their former friendly relations entirely restored."

After this, Marchant loaned to Rowe large sums of money upon his own bonds, without security; upon which, however, the interest has been regularly paid by Rowe, and which are not in controversy in this suit.

It is in proof, in the testimony in the record, that at the conference on the 14th of June, 1882, Rowe said to Marchant that he took the bonds when he (Marchant) was very sick, and his family did not expect him to live; and that, "inasmuch as Captain Marchant had told him that he (Marchant) intended to give him these bonds in his will, and knowing that he did not have a will at that time, he thought it would not be wrong for him to take the bonds and destroy them; but that, inasmuch as Captain Marchant objected to what he had done, and still wanted him to pay the bonds, that he would make all the amends in his power, and renew the bonds and pay them, if *Captain Marchant required him to do so.*" "That Captain Marchant said he would release all interest to date." Mr. Rowe then requested W. W. Woodward to draw a paper renewing the bonds, and he would sign it. Woodward then wrote a

renewal of said bonds in a memorandum book belonging to Captain Marchant, just under a memorandum of the dates and amounts of the said bonds, and Mr. Rowe then signed the same.    Captain Marchant then gave Mr. Rowe a release from all interest to date on said four bonds.    Captain Marchant told Woodward, *before these papers were signed,* that he intended to give Mr. Rowe these bonds in his will.

Marchant told the witness (Gisler) in 1876 that he *had given* to Rowe his bonds, which he held, and had given up the bonds which he held against the estate of his deceased son, John H. Marchant; and James R. Marchant testifies that his father, Capt. Marchant, had taken up and held the bonds which his son, John H. Marchant, had given for land which he had bought.

The witness (Fletcher) testifies that when he was at Marchant's house, in October, 1885, Marchant said to him that Rowe owed him $6,000, but he did not expect to recover $3,600 of this, as he *had given up to Rowe his bonds for that amount.*

It is in proof that Marchant released, or thought that he had released, his claim against his son, J. H. Marchant's estate, for $9,000.

The appellee, Thomas Marchant, filed his bill in this suit at September rules, 1885, claiming that the estate of Thomas B. Rowe, deceased, is indebted to him in the several sums evidenced by the four said bonds; and also in the sums evidenced by *two other bonds* of the said Thomas B. Rowe for $1,000 each on demand, as to which there is no controversy, the said two $1,000 bonds being admitted to be just obligations to be paid by the estate of Thomas B. Rowe, deceased.    The defendants (appellants here) answered the bill, and pleaded the statute of limitations in bar of the said four bonds, and that the said amounts evidenced by the said four bonds were "*advancements*" made to Rowe by his father-in-law, Thomas Marchant. Accounts were ordered to be taken by a master, who returned

a report *disallowing* the said four bonds in controversy, and also three alternate reports *allowing* them.

Appellants excepted to the three alternate reports.  The cause came on to be heard on the 11th of March, 1887, and the court overruled the appellant's exceptions to the alternate reports and confirmed the third alternate report, and decreed that the administrator of Thomas B. Rowe, deceased, pay to the complainant Marchant, *de bonis testatoris*, $6,502 75, with interest on $5,568 30, from 1st January, 1886, which included the said four bonds with interest from June 14th, 1882.  From this decree this appeal has been allowed.

The question to be decided by this court is whether the estate of Thomas B. Rowe, deceased, is liable for the amounts evidenced by the aforesaid four bonds, of principal or interest?  This question divides itself into two branches—first, whether these sums named in the said four bonds were *advancements* made and, at any time, perfected by Thomas Marchant to his daughter's (Rosa Ellen) husband, Thomas B. Rowe, or whether they are debts of Rowe to said Marchant; and, secondly, if debts, whether they were barred by statute at the time of suit begun?

An *advancement* is an absolute gift which the *donor* cannot recall, but for which he may, in his will, abate, *pro tanto*, the share of his estate devised or bequeathed in it to the *donee*.

A *debt* is an obligation of the debtor which the creditor retains the right to enforce.

These sums, evidenced by the said four bonds, were originally debts of Rowe to Marchant, the property in which Marchant did not at first part with, and for which he took Rowe's bonds as evidences of debt.  But Rowe, being the husband of his daughter, and a man whom Marchant valued, respected, and loved, it is apparent that Marchant let him have the use of these sums, and never did require any interest on them, though he took Rowe's bonds and held them.  That he considered the said sums as having been *given* by him to Rowe, appears from

the evidence in the record; but he had not perfected the gift or advancement until the conference with Rowe at his house June 14th, 1882. Rowe, in explaining why he had destroyed the bonds during Marchant's illness, said to Marchant that he had told him that he (Marchant) intended to give him the bonds in his will. Marchant did not gainsay this, and his conduct and statements show that he assented to it, and was entirely satisfied with the reasons given by Rowe for his having taken the bonds. Rowe offered to renew the bonds, and pay them if Marchant ever demanded their payment. Marchant never did demand their payment from Rowe in his lifetime, but was content with Rowe's acknowledgment, in his memorandum book, of the fact of the pre-existence of the bonds. It is evident that all Marchant desired or required was to have evidence of the pre-existence of these bonds for the justifying of his abating, *pro tanto*, the share of his daughter's husband in his distribution by will of his estate. By the paper signed by Rowe in his memorandum book, he was put in *statu quo* as to this, and that was all he wished or required; the destruction of the evidence of the existence of these bonds was the sole matter of complaint with him. He could not deliver up the bonds to Rowe *then*, as they had been destroyed; but he acquiesced and assented to their having been taken possession of by Rowe, and did not require their renewal; but he did release all interest upon them to date, and stated, in the writing which he then signed and delivered to Rowe, that it was his purpose only to charge him with the principal of the bonds in his will.

This transaction, and the words spoken and written, perfected the advancement of these sums as a gift to Rowe as fully, effectually and as manifestly as if Marchant had held possession of the bonds, and then and there had delivered them to Rowe, telling him that he would charge him in his will with the principal of the bonds as an advancement. Had Marchant not intended to perfect the advancement, but to still hold the obligation of Rowe as his *debtor*, he would have required dupli-

cates of the four bonds to replace those which had been destroyed, and he would have made no mention of charging them *in his will*, as such a charge would be wholly needless to perpetuate and enforce the debt.   We can rationally account in no other way for Marchant's words and acts, and for the paper which he signed then and delivered to Rowe; which paper, together with the paper signed by Rowe and delivered by him to Marchant, is one transaction, as fully as if both were written on one piece of paper; and, before the signing of either of them, Marchant said to Rowe that he intended to give the bonds to Rowe in his will.   That Marchant considered this transaction as a perfected gift of the bonds to Rowe is proved by his declaration to Fletcher in October, 1885, after he had brought this suit, in a deliberate conversation at Marchant's house, about his suit against Rowe's estate, that " he had given up to Rowe his bonds," and therefore could not recover the $3,600 00 evidenced by them.   The evidence of Fletcher and Gisler is unimpeached and uncontradicted.   The evidence in the record brings the mind irresistibly to the conclusion that Marchant *advanced* these sums on his daughter's share of his estate, by his assent to the possession of the bonds by Rowe, and that he perfected the gift of these sums by the transaction and satisfactory adjustment made at the conference June 14th, 1882, as fully as if he had then and there held and handed over the bonds to Rowe.

With this view of the case, it is not necessary to enquire into the force of the plea of the statute of limitations.

That the said four bonds in controversy would have been barred at the date of the institution of this suit, is admitted by the complainant; but it is urged that the paper signed by Rowe on 14th June, 1882, was a *new promise*, taking the bonds out of the bar of the statute, under section 10 of chapter 146, Code of 1873.   Taking the two papers of the 14th of June, 1882, together, or taking the one signed by Rowe, by itself, there is certainly *no express* promise of Rowe to pay the money

on these four bonds; and, in fact, *two* of them were *not then barred,* and required no new promise, and Marchant could have sued on them as lost bonds. There is nothing in the writing, or in the circumstances attending its being written and signed, to imply a promise to pay. Rowe's *verbal* offer and declarations do not amount to a written promise. He said that he would pay the bonds if Marchant should demand him so to do; but Marchant did not demand it, and was fully satisfied with the acknowledgment of the pre-existence of the bonds, which would justify him in abating the distributive share of his daughter *pro tanto.* The paper signed by Rowe is simply an admission of the pre-existence of his said four bonds, their dates and amounts, and that he had not paid them; but he does not promise to pay them, and leaves them just as they would be had they not been destroyed, and were then lying on the table before Marchant. The *implication* of a *new* promise to pay must arise from the words of the paper itself; the statute does not dispense with the requirement of *a writing* to create a new promise, either implied or express.

I am of opinion that the plea of the statute of limitations should be sustained, and that the decree complained of is erroneous, and should be reversed, so far as it overrules the exception of appellants to the three alternate reports of the master, and so far as it allows the said four bonds in controversy as *debts,* for which the estate of appellants' intestate, Rowe, is liable; and also, so far as it decrees costs against the said intestate's estate.

Judgment affirmed.