Merrimack, }
  Dec., 1900. }

## UPTON *v.* HOSMER *& a.*

Certain provisions in a lease for years deemed to constitute a covenant against
assignment by the lessee without the consent of the lessor, his heirs and
assigns.

If a lease is assigned in breach of the covenants of the original parties there-
to, the assignee is not entitled to a renewal provided for therein.

Acceptance of rent from the original assignee of a lease does not operate as
a waiver of a covenant against assignment, in favor of one to whom the
term was subsequently assigned without the actual or constructive knowl-
edge of the owner.

Where a lease which authorizes the removal of a building has been assigned
in breach of a covenant thereof, the assignee may be allowed a reasonable
time after the expiration of the term in which to effect such removal, when
it appears that there was no intent to defeat the rights of the owners.

BILL IN EQUITY, praying for specific performance, etc.  Facts
found by a referee.  An instrument under seal, dated August 1,
1878, between David F. Clark and Mason W. Tappan, was in the
following terms: " Witnesseth that in consideration of the rents
and covenants hereinafter reserved and contained, on the part of
the said Tappan to be paid and performed, the said Clark doth
lease to the said Tappan a certain piece of land in said New-
bury, at Pine Cliff, so called, on the east side of Sunapee lake, on
which said Tappan's cottage now stands, containing one half acre,

more or less, and bounded as follows, to wit: . . . The said lessee and his heirs having the right at any time during the terms hereinafter mentioned to terminate their lease and remove his cottage aforesaid from said premises, and, with the consent of the lessor, to sell or let the same to be occupied on said premises, with the privilege also of renewing this lease at the expiration of the term, on the same terms and conditions as herein contained. . . . To have and to hold the same to him from the first day of August, 1878, the term of twenty years next ensuing, unless this lease shall be sooner terminated by the lessee as aforesaid, paying therefor yearly during the said term, to the said Clark, his heirs and assigns, the yearly rent of three dollars, to be paid on the first day of August in each year, the first payment to be made on the first day of August, 1878. And the said David Clark agrees with the said Tappan that the said Tappan and his heirs shall peaceably possess the said premises during said term without the lawful interruption or eviction of any person whatsoever. And the said Tappan agrees that he will pay to the said Clark the said yearly rent of three dollars, at the days and times above mentioned, . . . and the same premises and every part thereof will peaceably deliver up to the said Clark, his heirs and assigns, at the termination of this lease, and that he will not underlet to any person unless with the consent of said lessor."

June 21, 1887, Tappan's administrator assigned the lease to Hiram D. Upton, and July 2, 1894, the latter assigned it to his wife, the plaintiff. The owner of the remainder quitclaimed the premises, subject to the lease, to the defendant Hosmer, December 8, 1888. The defendants knew that the premises had been assigned to Upton, but did not know that they were subsequently assigned to the plaintiff. September 1, 1897, the plaintiff gave the defendants notice that she desired a renewal of the lease. They replied, denying that the lease was assignable and refusing to renew. Upton paid $500 for the assignment of the lease, and added much to the value of the cottage on the premises by improvements and repairs.

*Edwin F. Jones,* for the plaintiff.

*Eastman & Hollis,* for the defendants.

PIKE, J. The defendants say that the plaintiff is not entitled to a renewal because of a breach of the covenant not to assign. The plaintiff says that the lease contained no such covenant, and that if it did, all rights that resulted to the lessor and his heirs therefrom were waived by the acceptance of rent from the plaintiff's husband.

In order that the parties to a lease may be bound by covenants, it is not necessary that they be expressed in any special form. It is sufficient if the intention of the parties can be gathered from the instrument, read in the light of the competent evidence bearing upon its interpretation. *Cole* v. *Lake Co.*, 54 N. H. 242; *Rice* v. *Society*, 56 N. H. 191, 197; *Brown* v. *Bartlett*, 58 N. H. 511; *Houghton* v. *Pattee*, 58 N. H. 326; *Morse* v. *Morse*, 58 N. H. 391; *Wilkins* v. *Ordway*, 59 N. H. 378; *Goodale* v. *Mooney*, 60 N. H. 528; *Kennard* v. *Kennard*, 63 N. H. 303, 310. Besides the lessee's covenant not to underlet without the lessor's consent, the lease provided that the lessee and his heirs should have " the right at any time . . . to terminate their lease and remove his cottage"; also that " with the consent of the lessor" they might " sell . . . the same to be occupied on the premises." No restrictions were placed upon the sale of the cottage after removal, upon a termination of the lease; but the lessee, his heirs and assigns, were not permitted to make a sale of it, to remain upon the premises, without the consent of the lessor, his heirs and assigns. The purpose of the restrictive clause appears to have been not so much to control the sale of the cottage, as to prohibit the lessee, his heirs and assigns, from making an assignment of the lease without first obtaining the consent of the lessor, his heirs and assigns.

This view is strengthened when it is considered that the lease provided for the payment of the yearly rental and for the delivery of the premises at the termination of the lease, to the lessor, his " heirs and assigns," and that, although rights under the lease were expressly granted to the lessee and his " heirs," none were expressly granted to his " assigns." It is true that a lease is assignable whether the word " assigns " appears in the lease or not. *Spear* v. *Fuller*, 8 N. H. 174. So, also, the term survives although it is not expressly limited to the lessee and his " heirs." 1 Wash. R. P. *368. But the use of the words " heirs and assigns " in connection with the lessor's name, and the omission of " assigns " in connection with the lessee's, indicate that " assigns " was not omitted because, as a matter of law, the lessee could make a legal assignment in its absence. The use and disuse of these words were to make plain the parties' intention, that although the fee of the estate might descend to the lessor's heirs or pass by deed to his grantee, the premises should not be used by an undertenant or by the lessee's assignee without the consent of the lessor, his heirs and assigns.

The lease having passed by assignment to the plaintiff without the consent required by the lease, it remains to be considered whether, as she claims, the defendants waived any of their rights resulting from the breach of the covenant by the acceptance of

rent from her husband. There could be no waiver unless they knew of this assignment, or were chargeable with constructive notice by reason of the record. It appears, however, that they had no knowledge of this fact, and unless the record makes them chargeable with notice there could have been no waiver. The purpose of a record of a conveyance of real estate is to establish priority as respects conveyances from a common grantor. It affects subsequent purchasers only, and cannot be considered notice to the original lessor or his assigns. The lease having been assigned to the plaintiff in breach of the covenants of the original parties, she is not entitled to a renewal.

It appears, however, that the plaintiff's husband paid $500 for the assignment of the lease, and that he added largely to the value of the cottage by improvements and repairs. It does not appear that there was any intent upon the plaintiff's part to defeat any of the rights of the lessor and his assigns under the lease. Under such circumstances it would be unjust to allow the defendants to retain the cottage. The plaintiff's petition is denied, but she will be allowed a reasonable time in which to remove the cottage from the premises.

*Case discharged.*

PEASLEE, J., did not sit: the others concurred.