Hillsborough, }
Nov. 4, 1908. }

## HAYWARD, *Adm'r*, *v.* SPAULDING *& a.*

The interpretation of a will is the ascertainment of the testator's expressed purpose as disclosed by all the competent evidence, and not the application of technical rules of construction, under which particular phrases or terms are necessary to express a given intent.

A testator's manifest intention to give his estate to his sons' children after the death of a devisee for life is not defeated by his failure to provide trustees to support the remainder, upon the termination of the life estate before the birth of children. In such case it is to be presumed that he intended to impose the trust upon his executor.

PETITION, for advice as to the execution of the will of Jonathan Spaulding. Transferred from the September term, 1907, of the superior court by *Peaslee*, J.

The will contains the following clause: "At the decease of my said wife, or in case of her marriage after my decease, I give, bequeath, and devise all the property in her hands and possession at the time of the happening of either event in equal shares to the children of my two sons, Charles A. Spaulding and Albert M. Spaulding, and their heirs forever."

The will gave the widow the estate for life, with the right to use the principal if necessary for her support, and named her as executrix. After her decease the plaintiff was appointed administrator and received both realty and personalty as the estate of Jonathan. The two sons were Jonathan's only descendants. Charles died after his father's death, but before that of his mother. He left a widow, but no children. Albert is a bachelor about fifty years old.

*George E. Bales*, for the plaintiff.

*Hess & Crow* (of Illinois), for the defendants.

PARSONS, C. J. At his decease the testator left a widow and two sons. Neither of the sons then had, or had had, children. Under the provisions of his will, a child of either of the two sons living at the testator's death would have taken an interest in the real estate, defined under the terms of the common law as a vested remainder, the vesting of which would have opened to let in afterborn children, while such interest might have been destroyed by the consumption of the estate in the necessary support of the

widow.  As there was no child in existence when the will took
effect, the gift over was to a dubious or uncertain person.
Such a remainder is described as contingent.  As no child was
born during the existence of the particular estate in the widow,
the remainder never vested; and under the strict rules of the
common law, the remainder failed because of the termination of
the estate which supported it.  Executory devises were instituted
to support the will of the testator in cases where by the rules of
law a devise of a future estate could not operate as a remainder.
They "were allowed out of indulgence to testators, that they
might, without the intervention of trustees to preserve remain-
ders, establish future interests in strict settlement beyond the
reach of those who had the prior estates."  *Burleigh* v. *Clough*, 52
N. H. 267, 273; *Wood* v. *Griffin*, 46 N. H. 230, 235; *Yeaton* v.
*Roberts*, 28 N. H. 459; *Eaton* v. *Straw*, 18 N. H. 320.

If there had been no devise to the widow, or if the devise to
her had lapsed by her death before the testator, the devise to the
unborn children would have been supportable as an executory
limitation (Fearne Rem. 525, 526), because in such case the lim-
ited estate was never supported by a freehold and could not be
construed as a remainder, which requires such an estate to sup-
port it.  But in consequence of the rule that a devise which can
be construed as a remainder will never be deemed an executory
devise (*Burleigh* v. *Clough*, 52 N. H. 267, 273), it is said that
where the preceding freehold has once vested so as to sup-
port a contingent remainder, the devise cannot by any subsequent
accident enure as an executory limitation.  Fearne Rem. 386,
395, 526.

But the validity of these rules, however well supported by
authority, need not be considered.  However simple their applica-
tion would make the disposition of the case, they cannot be relied
upon.  Rules of interpretation under which particular phrases or
terms are necessary to express a particular intention, or to give
effect thereto, have long since been abandoned here.  As was said
in *Kennard* v. *Kennard*, 63 N. H. 303, 311, in reference to earlier
cases then cited and relied upon: " Upon the rule of testamentary
interpretation established in this state, it is immaterial whether
the doctrine of remainders is correctly or incorrectly applied.
.  .  .  Whatever that doctrine may be and however it may be
applied, it does not set aside the supreme rule that the interpreta-
tion of a will is the ascertainment of the testator's intention.  If
it upholds the intention disclosed by the terms of the will in this
case, it is useless; if it does not uphold it, it is equally useless, as
it cannot break the will."

It is not necessary that the intention of any written instrument

should be expressed in a particular form of words, or by the use of technical terms. "It is sufficient if the intention of the parties can be gathered from the instrument, read in the light of the competent evidence bearing upon its interpretation." *Upton* v. *Hosmer*, 70 N. H. 493, 495. The testator's intention is the sole subject of inquiry. It "is determined as a question of fact by competent evidence, and not by rules of law." *Edgerly* v. *Barker*, 66 N. H. 434, 447, and cases cited; *Stratton* v. *Stratton*, 68 N. H. 582, 585. When ascertained, such intention is to be given effect, with the exception, however, that the intention cannot be followed when it is impossible or illegal to do so; "for an intention will not avail to create an illegal or an impossible estate." *Burleigh* v. *Clough*, 52 N. H. 267, 271. Decisions "which have in so many cases defeated the intention of testators, by substituting, through the application of an artificial and technical rule of law, a different estate from that which the testator intended" (*Eaton* v. *Straw*, 18 N. H. 320, 329, 330), are not now followed here.

The testator intended that his real estate, as well as his personal property, should go to the children of his two sons. The gift was one he had power to make. The fact that his wife survived him, or that no child was born in the lifetime of the widow, is not a sufficient reason for breaking his will. It cannot be inferred from the will that he intended his sons' children should have the estate if he survived his wife, and that his sons should have it if she survived him, because he expressly provided in that case for the extent to which the gift to the children should be diminished by the necessities of the widow. Neither does his failure to provide trustees to hold an estate sufficient to support the remainder, in case of the death of his widow before the anticipated birth of children, render impossible the preservation of the estate for them. He knew that at the death of his widow the appointment of an executor in the capacity of the plaintiff, to collect the estate and transmit it to the persons entitled, would be required. Not having provided another to hold the property, if necessary, it is to be inferred he intended to impose such trust upon the plaintiff, or upon the person who might occupy his position. *Campbell* v. *Clough*, 71 N. H. 181; *Chase* v. *Currier*, 63 N. H. 90. If the plaintiff cannot execute the trust, a trustee can be appointed by the superior court. 1 Per. Tr., s. 121.

The testator intended that both the real and personal estate should take the same course. Effect must be given to that intention. *Parker* v. *Ross*, 69 N. H. 213, 216. It is unnecessary to consider whether the objections that have been urged to the preservation of the real estate for the unborn children are, or are not, applicable to the personal estate. If they are not, as appears to

be conceded in argument, the testator's intention that both should take the same course is a further answer to the objections that have been raised.

The time of distribution intended by the testator is now immaterial. Whenever he intended or expected such distribution to be made, he did not intend the distribution should be made before any of the class to whom he gave his estate came into existence. As the testator intended the children should have all the property and gave none to his sons, he did not intend the sons should have the income after, or before, the children should be born.

*Case discharged.*

PEASLEE, J., did not sit: the others concurred.