LOUIS C. DEXTER *vs.* SAMUEL A. FULLER.

Suffolk.    January 22, 1914. — February 28, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Bills and Notes*, Indorser.    *False and Fraudulent Representations.*

If an accommodation indorser of a promissory note is induced by false and fraudulent statements of a proposed purchaser of the note, to the effect that the maker of the note is able to pay it and is "perfectly good," to allow the maker of the note to deliver it to such purchaser with his indorsement upon it, he is not liable to the purchaser upon such indorsement, although such representations were made after he had put his name on the note and had returned the note to the maker, if they were made before the delivery of the note to the purchaser and induced the indorser to permit such delivery.

CONTRACT on a promissory note dated June 20, 1912, for $350 payable three months after date to the order of the maker, signed by Allen H. Bearse as maker and indorser and by Samuel A. Fuller, the defendant, as indorser. Writ in the Municipal Court of the City of Boston dated September 28, 1912.

On removal to the Superior Court the case was tried before *Bell,* J. It appeared that the defendant was an accommodation indorser of the note and that the plaintiff paid Bearse $305 for the note.

The plaintiff also testified in substance that the transaction was purely a business one; that he was a money lender; that he was lending the money to Bearse because he expected to make a profit thereon, and that he was not acting as a friend who had volunteered to assist Bearse in raising money; that Bearse had on two previous occasions solicited loans from the plaintiff and that the plaintiff had refused to lend him any money without an indorser; that he had looked up Bearse and did not regard him as sound financially and able to meet his obligations.

There was evidence for the defendant that his indorsement on the note was procured under the following circumstances: That he was an attorney at law and was engaged in the trial of a case in the second session of the Superior Court in Suffolk County, which was the session in which Bearse, the maker of the note, was employed as assistant clerk; that the defendant had known Bearse as clerk at the court for six or eight years; that Bearse introduced the plaintiff to the defendant in the court room during a recess; that the defendant asked the plaintiff about Bearse's financial condition and the plaintiff replied that he knew Bearse was all right and was able to pay the note, that he was perfectly good; that the plaintiff was a friend of Bearse and that Bearse needed $350 at the time in order to help Bearse's brother out of a little difficulty and that they needed the defendant's indorsement to help raise the money; that the defendant at that time knew nothing about Bearse's financial condition and he relied entirely upon what had been told him by the plaintiff as to the nature and purpose of the transaction and as to Bearse's financial condition; and that on these representations of the plaintiff the defendant was induced to sign the note as he did; that when the note fell due the defendant had a conversation with the plaintiff

in which the defendant said to the plaintiff, "You didn't tell me that you were a money lender. If I had known that you were a money lender I should not have gone on the note. I thought that you were a friend of Bearse. You knew that Bearse was not good financially, that he was financially embarrassed at the time (of the making of the note), that he had been dealing with a lot of money lenders who were constantly pressing him and you should have told me these things when I asked you at the time I went on the note." To all of which the plaintiff replied, "Well, it was up to you to look him up yourself." The plaintiff denied that this conversation took place.

The judge submitted to the jury the following questions:

"1. Did the plaintiff state to the defendant that Bearse was perfectly good to pay the note or was all right financially? If only one, state which.

"2. Were such statements, or either of them, intended and understood to be a representation of facts known to the plaintiff? Or as an expression of an opinion? If not both, state which.

"3. Was the statement, if any was made, made before the defendant had put his name on the note?

"4. Were they made after the defendant put his name on the note and before he delivered it to Bearse?

"5. Were they made after the defendant put his name on the note and after its delivery to Bearse but before its delivery to Dexter?

"6. If such statements were made, were they or either of them a material inducement in determining the defendant to indorse and deliver the note? If not both, which one."

The jury went out and deliberated upon their verdict. It appeared that they had agreed upon their answers to five of the questions but had not agreed upon the sixth. *Bell*, J., being obliged to leave the Commonwealth, asked *Hitchcock*, J., who was holding another session, to receive the answers of the jury, stating in writing that in his opinion the verdict should be for the plaintiff for the full amount of the note and interest, whatever the answers should be, and that he so directed.

The jury were called in and pursuant to this order were directed to return a verdict for the plaintiff, and the jury returned such a verdict in the sum of $367.46. The answers to the questions so

far as made by the jury were not signed by the foreman and were not affirmed.

The answers of the jury were as follows:

"1. The plaintiff did state to the defendant that Bearse was perfectly good to pay the note.

"2. Yes, the answer to question one was stated as a fact.

"3. After.

"4. Yes, and after delivered to Bearse.

"5. Yes."

They failed to answer the last question.

The defendant alleged exceptions to the ordering of the verdict, which were allowed by *Bell,* J.

*J. L. Keogh,* for the defendant, was not called upon.

*H. S. MacPherson,* (*J. B. Mahar* with him,) for the plaintiff.

SHELDON, J. It seems plain to us that upon the evidence the jury were warranted in making the answers that they did to the first five of the questions submitted to them, and that they would have been warranted in finding upon the sixth question that both of the plaintiff's statements were material inducements in determining the defendant to indorse and deliver the note to the plaintiff. Upon such findings the defendant would have been entitled to a verdict, if it were found also, as it might have been, that these statements of the plaintiff were false and fraudulent and that by means of them the plaintiff had intended to procure and had succeeded in procuring the defendant's indorsement. *Andrews* v. *Jackson,* 168 Mass. 266. *Whiting* v. *Price,* 169 Mass. 576. *Boles* v. *Merrill,* 173 Mass. 491. *Gurney* v. *Tenney,* 197 Mass. 457. *Ginn* v. *Almy,* 212 Mass. 486, 504.

It follows that a verdict should not have been ordered for the plaintiff, and there must be a new trial.

*Exceptions sustained.*