Antonio Lamenza *vs.* Charles A. Shelton et al.

First Judicial District, Hartford, May Term, 1921.

Wheeler, C. J., Beach, Gager, Curtis and Burpee, Js.

A renewed or extended lease must be in all respects the same as the original lease.

A privilege of renewing and extending a lease made to joint lessees can be exercised only by both lessees.

In the present case a lease with such a privilege was made to two named persons who were then or thereafter engaged in business as partners. Later one of them retired from the partnership and the business was carried on by the other, upon whose behalf alone notice of renewal was given. In an action of summary process brought by the lessor, the defendants claimed that the notice was equivalent to a notice by the partnership, and also relied upon waiver and estoppel based on the lessor's statement that the lessee continuing in business did not need to attend to the renewal until he returned from service in the United States Army. *Held* that the lease was not to the partnership, but to the individuals, and hence that no sufficient notice of renewal had been given; that the facts claimed to show estoppel went only to show an extension of time to give notice and not an agreement to dispense with proper notice; and that therefore no defense to the action was shown.

A judgment notwithstanding the verdict may be entered for the plaintiff when, upon the pleadings and the whole record before the court, it is manifest that the plaintiff is entitled to judgment according to law.

On a writ of error in a summary process proceeding, the bill of exceptions places the material facts on the record, and is presumed to state all the facts necessary for a review of the questions of law that have been raised; and if upon such a record the only error of the trial court was in drawing the wrong legal conclusion therefrom, the reversal of the judgment imports that it should render a judgment for the other party without a new trial or further inquiry as to the facts.

The defendants made neither allegation nor proof of notice of renewal by both lessees, or of assignment by one lessee to the other with the plaintiff lessor's permission. Upon a writ of error taken by the plaintiff from the judgment of the justice court, the Court of Common Pleas directed that such judgment should be reversed. *Held* that such a direction did not imply the grant of a new trial, but that, under the facts of record, the judgment should be for the

plaintiff; that if there were other facts than those on which this action was tried, the time to allege and prove them had passed, and therefore the judgment of reversal was equivalent to a direction—for which an explicit mandate was not necessary, but would be the better practice—that the justice court should enter judgment for the plaintiff.

Argued May 4th—decided June 1st, 1921.

WRIT OF ERROR to reverse an alleged erroneous judgment of a justice of the peace in favor of the defendant tenants in an action of summary process, brought by the plaintiff landlord to the Court of Common Pleas in Hartford County (*Dickenson, J.*) which found error and reversed the judgment of the justice of the peace, and from this judgment of reversal the defendant tenants appealed. *No error.*

The plaintiff (landlord) also appealed for the alleged error of the court in refusing to order the justice to enter judgment for the plaintiff notwithstanding the verdict in the case. *No error.*

This action was tried to the jury on an answer admitting the lease and possession of the premises, and denying that the lease had expired; and setting up a second defense of waiver and estoppel. The lease was made April 27th, 1914, by the plaintiff as party of the first part, and "Charles Arthur Shelton and Frederick W. Woodhouse, of the town of Manchester," as "parties of the second part," was for the term of five years from April 27th, 1914, and contained the following clauses:—

"And the said parties of the second part do covenant . . . that they will not, during said term, assign or underlet said premises or any part thereof without the permission in writing of the said party of the first part. . . .

"And it is further understood and agreed by and between the parties hereto that the lessees herein

shall have the privilege of renewing and extending this lease for a further period of five years from and after the 27th day of April, 1919, providing they give to said Lamenza or his representatives a notice in writing of their intention to renew or extend this lease on or before October 27th, 1918."

The second defense alleged, in substance, that "prior to January 1, 1917, the defendants" were engaged in business on the leased premises as partners, but about that date Shelton retired from the partnership, and thereafter Woodhouse managed the business; that in July, 1917, Woodhouse went to France in the United States Army, and appointed Louise Dauplaise his agent to carry on his business on the premises; that the plaintiff knew these facts; that in August, 1918, Louise Dauplaise told the plaintiff that Woodhouse desired to extend the lease and would take the necessary steps for that purpose; that the plaintiff replied to her that Woodhouse's rights under the lease would be safe and nothing need be done to protect them until Woodhouse returned, and then all arrangements might be made; that the plaintiff made these statements with the intention of misleading Louise Dauplaise and inducing her to refrain from giving the necessary notice to extend the lease; and that she believed these statements, and thereby was induced to refrain from giving such notice. These allegations the plaintiff denied and left the defendants to prove. The jury rendered a verdict for the defendants. The plaintiff then made a motion for judgment in his favor notwithstanding the verdict, which the justice court denied, and rendered judgment that the defendants were entitled to possession of the premises. The plaintiff obtained a writ of error on the following bill of exceptions:—

"1. Upon the trial of this case to the jury, as on file, evidence was offered and it was undisputed, that

on April 27, 1914, plaintiff and defendants entered into a written lease of the premises described in the complaint, a copy of which lease was annexed to the complaint; that about the first of January, 1917, the defendant Shelton sold his interest in the business theretofore carried on jointly by the defendants in said premises to the defendant Woodhouse, and that thereafter the defendant Shelton ceased the occupancy of said premises and terminated all connection therewith; that said Shelton did not give any notice, written or otherwise, of his desire to exercise the option of renewal and extension contained in said lease, and that no one authorized to act for him gave any such notice. No evidence was offered that said Shelton had ever assigned his interest in said lease to the defendant Woodhouse, or that the relationship between plaintiff and both defendants, as expressed in the lease, had ever been altered or changed with the approval of the plaintiff.

"2. No written notice was given the plaintiff by Woodhouse or any person in his behalf of his desire to renew and extend the lease until November 26, 1918, when the following was given him:

'So. Manchester, Ct.
Nov. 26, 1918.

'To Tony Lamenzo,

'I hereby give you notice that I renew of the lease of store now occupied by me in your building for the further period of five years next after the expiration of the reginald five years term.

'And Oblige
'Fred W. Woodhouse
'By Louis S. Dauplaise,
Atty.'

"3. Shelton did not appear at the trial and has never made any claim to any rights in said lease or

said premises after the expiration of said five year term on April 27th, 1919.

"4.   The defendant Woodhouse sought to excuse the giving of a written notice by reason of a verbal conversation between said Dauplaise and the plaintiff alleged to have been had on the last Friday in August, 1918.   Mrs. Dauplaise testified that in this conversation she said 'You are just the man I want to see' and that she told him she had a letter from Fred and that Fred told her to go around and see about renewing the lease; that it was over in April, and that she was to go in and see the plaintiff about it.   She says that at that time plaintiff said 'Everything is all right. You write back and tell Fred not to worry.   I will fix up everything for Fred when Fred comes home.'

"5.   The defendant Woodhouse returned to this country early in January, 1919, but never at any time gave the plaintiff any written notice of his desire to renew or extend the lease.

"6.   The plaintiff denied this conversation, and claimed that in any event, if found to be had, it did not constitute either a waiver or estoppel, and further that it did not excuse the defendant Woodhouse from giving notice in writing promptly upon his return.

"7.   The plaintiff also claimed that the conversation hereinbefore set forth applied to only one of the defendants and did not excuse Shelton, who was at all times in this country, from giving the written notice stipulated in the lease."

The parties were at issue in the Court of Common Pleas on a plea of nothing erroneous, but the court found error on the record in the instructions given by the justice court to the jury.   From its judgment upon these matters, the defendants appeal.   The Court of Common Pleas also denied a request made by the plaintiff that, if the court found error, it should remand

the case to the justice court with a mandate to enter judgment for the plaintiff notwithstanding the verdict. From this ruling the plaintiff appeals.

*Herbert O. Bowers,* for the appellants (defendants).

*Joseph P. Tuttle* and *Reinhart L. Gideon,* for the appellee (plaintiff).

BURPEE, J. The justice court charged the jury that if either of the defendants gave written notice, it was "equivalent to a notice given by the partnership." The lease was not made with a partnership, nor does it mention a partnership or partners. The "parties of the second part" were joint lessees. It does not appear among the facts alleged in the pleadings or stated in the bill of exceptions, that they were in partnership when the lease was made on April 27th, 1914. It appears only that "prior to January 1st, 1917," they were engaged in business as partners. But, assuming that they had begun this business before they made the lease, it is alleged, and was admitted, that Shelton retired from the partnership on January 1st, 1917. But it is not alleged, and there was no evidence, that the lessor had given permission to Shelton to make an assignment of his interest in the lease, or that Shelton had made such an assignment. The rights and obligations of the parties to the lease remained unchanged from the day the lease was made until it expired. The joint lessees had the privilege of renewal provided they gave notice of their intention to renew within the time limited. This privilege, granted to both, the lessor was not bound to extend to one, and thus in effect make a new lease with only one lessee, who might not by himself be financially responsible or otherwise acceptable to the lessor. One of the lessees, by exercising

the option of extension, could not bind the other lessee. They must act together in order to continue to bind themselves and their lessor after the expiration of the lease. A renewed or extended lease must be in all respects the same as the original lease. *Tweedie* v. *P. E. Olson Hardware & Furniture Co.*, 96 Minn. 238, 104 N. W. 895; *Howell* v. *Behler*, 41 W. Va. 610, 615, 24 S. E. 646; *Upton* v. *Hosmer*, 70 N. H. 493, 49 Atl. 96; *Drummond* v. *Fisher*, 16 N. Y. Supp. 867.

It is admitted that Shelton gave no notice of intention to renew or extend the lease. Without his co-operation Woodhouse was helpless. The notice he attempted to give by his agent did not pretend to be the act of Shelton or of any assignee of Shelton. It was only Woodhouse's individual act. For that reason, even if it had been given within the time limited by the lease, it was not sufficient in law to effect a renewal or extension of the lease. The charge of the justice court, that if notice was given by one of the defendants it was "equivalent to a notice given by the partnership," and that "a notice by the purchasing partner is good so far as this case is concerned," was not applicable to the facts or correct as a statement of the law, and the Court of Common Pleas properly found it erroneous.

To make good their denial that the lease had not expired before the action of summary process was begun, the defendants attempted to prove that the lease had been renewed or extended. In view of the admitted facts stated in the bill of exceptions and mentioned above, it is apparent that they could not establish this defense, and that they had lost the right to a renewed or extended lease before the expiration of the term fixed by the original lease.

In their second defense the defendants attempted to escape from the consequences of these facts by setting up certain statements made by the plaintiff which they

claim to be a waiver by him of the required notice of intention to renew or extend the lease, and an estoppel against his claim that such notice was not given. But it is not alleged that the plaintiff by any statement waived his right to the written notice provided for in the lease. In the statement set forth he waived only his right to notice within the time limited by the lease, and extended the time until Woodhouse returned to Manchester. It is not alleged that he refused to keep his promise, or that he at any time has declined to receive and recognize any sufficient notice from the defendants. It is set up that Woodhouse's agent was induced to refrain from giving the required notice, and that appears to have been what she and the plaintiff intended; but it is not alleged that Woodhouse was induced to refrain from making necessary arrangements to protect his rights after he came home. The plaintiff's waiver of his right to notice within the limited time, and his extension of the time, were plainly not harmful, but beneficial, to the defendants, and by relying on the statement he in fact made they could not have been misled to their prejudice or loss. Therefore the necessary elements of estoppel do not appear in this second defense. *Clinton* v. *Haddam,* 50 Conn. 84, 86; *Aetna Nat. Bank* v. *Hollistor,* 55 Conn. 188, 213, 10 Atl. 550; *Webb* v. *Moeller,* 87 Conn. 138, 141, 87 Atl. 277. Moreover, the defendants admitted, as stated in the bill of exceptions, that Woodhouse returned to Manchester in January, 1919, and thereafter did nothing about the renewal or extension of his lease, which did not expire until April 27th, 1919. There was a reasonable time in which to make arrangements with the plaintiff. Hence he could not set up in his defense that he was misled or injured in any way by the assurance the plaintiff gave. As we have said, the notice required to protect Woodhouse's rights must be one in which Shelton joined or

was represented. It is not alleged that Woodhouse could or would have procured and given such a notice in any circumstances. There was no foundation in the pleadings or facts to support the charge of the justice court that the plaintiff had "waived the requirements of notice and is now estopped from claiming under them."

The same reasoning leads to the same conclusion concerning the other parts of the charge specified in the reasons of appeal.

It remains to consider the plaintiff's assignment of error, which relates to the refusal of the Court of Common Pleas to issue its mandate to the justice court to enter judgment for the plaintiff notwithstanding the verdict. Such a judgment may be entered when, upon the pleadings and the whole record before the court, it is manifest that the plaintiff is entitled to judgment according to law. *Fitch* v. *Scot*, 1 Root, 351; 1 Freeman on Judgments (4th Ed.) § 7; Black on Judgments, § 16; 23 Cyc. 779. In this case, under the complaint and first defense, the issue was whether the lease had expired before the action of summary process was begun on January 10th, 1920. Being forced to admit that the term fixed by the lease had ended on April 27th, 1919, the defendants attempted to prove that it had been extended or renewed in accordance with the privilege granted to the lessees. This required proof of notice by or for both lessees. But it was not alleged that any notice had ever been given by or for Shelton, and in fact it was admitted that none had been given. Hence the plaintiff was entitled to "judgment according to law," under the complaint and first defense and the facts of record (*Fitch* v. *Scot, supra*), and it was the duty of the justice court to give it. Furthermore, although it was alleged in the second defense that Shelton was a joint lessee, it was not set up that he had

assigned his interest in the lease with the plaintiff's permission, and no evidence was offered to prove that he had. Therefore the plaintiff was entitled to judgment upon the issues made by the second defense. Now, it is beyond question that these essential facts of sufficient notice and of the plaintiff's written permission to an assignment of an interest in the lease can never be established by the defendants. On this writ of error the Court of Common Pleas has reversed the judgment of the justice court on principles which show that this defense cannot be sustained in a new trial in the justice court. That court, on these pleadings and facts, adjudged that the defendants were entitled to possession of the premises described in the complaint. The Court of Common Pleas, after hearing on the writ of error, has adjudged that this judgment of the justice court "be and it is hereby reversed." This latter judgment did not "imply the grant of a new trial." *Coughlin* v. *McElroy*, 72 Conn. 444, 44 Atl. 743. We said in this case, p. 446: "The reversal of a judgment annuls it, but does not necessarily set aside the foundation on which it rests. This foundation may be sufficient to support a judgment of a different kind, and may be such as to require it. A reversal therefore is never, standing alone, and *ex vi termini*, the grant of a new trial. If the error was one in drawing a wrong legal conclusion from the facts properly found and appearing on the record, it would be an unnecessary prolongation of litigation to enter again on the work of ascertaining them. This is equally true, whether the proceedings leading to the reversal were such as at one time in our judicial history would have properly taken the form of . . . motion for a new trial. *Fritts* v. *New York & N. E. R. Co.*, 63 Conn. 452 [28 Atl. 529]." This is equally true in an action of summary process. The admitted facts will not permit the defendants to strengthen their

case by amendment of their pleadings. If there are other facts than those on which this action has been tried, the time to allege and prove them has passed. "A case cannot be presented by halves." *Coughlin* v. *McElroy*, 72 Conn. 444, 44 Atl. 743. "In every trial which may result in an appeal to this court, it is the duty of each party, so far as he is able, to see that whatever is material to support his contentions is proved and found. If he content himself with bringing forward only so much as he may deem sufficient to meet those of his adversary, he must be prepared, should an appeal be taken on either side, to have it decided with reference to no other facts than those apparent on the record." *Ibid.*

This is as applicable to a summary process proceeding on a writ of error as to any other action. The bill of exceptions places the material facts on the record, and it is presumed to state all the facts necessary for a review of the questions of law that have been raised. 1 Swift's Digest, side pages 771, 790. Upon such a record, if the only error of the trial court was in drawing the wrong legal conclusion therefrom, the reversal of the judgment "imports that it should render judgment for the other party, without a new trial or further inquiry as to the facts." *Coughlin* v. *McElroy*, 72 Conn. 444, 44 Atl. 743. This principle of law, sometimes formulated by code or by statute, has been recognized and followed in other States. See 4 Corpus Juris, 1150 (§ 3157), 1185 (§ 3223), 1187 (§ 3224); *Waldo County* v. *Moore*, 33 Me. 511; *Bell* v. *Twilight*, 17 N. H. 528; *National Bank of N. J.* v. *Berrall*, 70 N. J. L. 757, 58 Atl. 189; *Huntley* v. *Houghton*, 85 Vt. 200, 81 Atl. 189; *Robinson* v. *Sylvester Tower Co.*, 204 Mass. 191, 195, 90 N. E. 413; *Morgan* v. *Murdough*, 216 Mass. 502, 104 N. E. 455; *Fairchild* v. *Edson*, 154 N. Y. 199, 48 N. E. 541; *Matter of Rapplee*, 66 Hun (N. Y.) 558, 560, 21 N. Y. Supp. 801; *Minnear* v. *Holloway*, 56 Ohio St. 148,

46 N. E. 636; *Fort Scott* v. *Hickman*, 112 U. S. 150, 165, 5 Sup. Ct. 56; *Green County, Ky.* v. *Quinlan*, 211 U. S. 582, 29 Sup. Ct. 170; *Brown & Brown Coal Co.* v. *Antezak*, 164 Mich. 110, 117, 128 N. W. 744.

We think, therefore, that the judgment of the Court of Common Pleas reversing the judgment of the justice court is equivalent to a direction to the latter court to enter judgment for the plaintiff in this action, and, although explicit mandate to that effect was not necessary, it would be better practice to include it in the judgment.

There is no error.

In this opinion the other judges concurred.