L & H Realty Company, Appellee, *v.*
Oberholtz, Appellant.

[Cite as L & H Realty Co. v. Oberholtz (1979),
65 Ohio App. 2d 279.]

(No. 9238—Decided August 22, 1979.)

*Mr. Paul A. Weick,* for appellee.
*Mr. Stanley P. Aronson,* for appellant.

Victor, J.   On December 1, 1968, an agreement to lease office space was executed "by and between Fairlawn Square, Inc.,***[the 'lessor']***and J. C. Oberholtz, M.D. and H. J. Hanlon, M.D. [the 'lessee'] of the City of Akron, Ohio***." The term of the lease was for ten years, from December 1, 1968, to November 30, 1978. Article XX of the lease gave the "lessee***the right and option to extend the term of the lease for an additional five years," at a specified rental "***subject to the condition that written notice of the exercise of the within option is given by LESSEE to LESSOR not less than One Hundred Twenty (120) days prior to the termination of the original term***."

In January of 1972, before the expiration of the original term, Dr. Hanlon vacated the premises. Dr. Oberholtz continued to occupy the premises and to pay the rent. In

September of 1972, the doctors formally dissolved their partnership. The lessor, Fairlawn Square, Inc. (the third-party defendant), neither objected to Dr. Oberholtz' sole occupancy nor demanded additional security on the lease. The lessor had knowledge of Dr. Hanlon's vacation of the premises as is evidenced by the lessor's removing the sign on the premises that stated "J. C. Oberholtz, M.D. and H. J. Hanlon, M.D., Physicians and Surgeons," and replacing it with one stating "James C. Oberholtz, M.D., Inc., Physician and Surgeon."

In April 1978, Dr. James C. Oberholtz (the defendant-appellant and third-party plaintiff) apparently sent written notification to Fairlawn Square, Inc., of his intention to exercise the option to extend the term of the lease. (Neither the original nor a copy of that notice is present in the record.) Dr. Hanlon did not join in the notice to renew the lease.

On July 28, 1978, Fairlawn Square, Inc., notified Dr. Oberholtz that L & H Realty Company (the plaintiff-appellee and hereinafter referred to as L & H) would be the new landlord. (L & H is the lessor's assignee under Article XXIV of the lease.)

L & H accepted rent from Dr. Oberholtz until November 1978. At that time, L & H informed Dr. Oberholtz that he would not be permitted to exercise the option to renew (set forth, *supra*) and demanded an increase in rent from that stated in the option, or Dr. Oberholtz would have to vacate the premises. Dr. Oberholtz refused to leave.

On December 5, 1978, L & H commenced an action in forcible entry and detainer in the Akron Municipal Court. Dr. Oberholtz answered the complaint and counterclaimed seeking specific performance directing L & H to honor the option to renew or to pay damages.

Both parties moved for summary judgment and filed briefs and affidavits in support of their respective motions.

The trial court granted summary judgment for L & H and determined that:

"***L & H Realty has no obligation to honor the renewal option if there is a modification of the lease, the modification being the substitution of defendant Oberholtz as the sole lessee."

Dr. Oberholtz appeals that finding and asserts the following assignments of error:

"I.  The trial court erred in granting plaintiff's motion for summary judgment.

"II.  The trial court erred when it denied appellant's motion for summary judgment."

Upon valid exercise by the lessee of the option to extend, the extension continues the original lease for a period of five years. A new lease need not be executed. Cf. *Corvington* v. *Heppert* (1952), 156 Ohio St. 411. Further, a sublessee or subtenant must look to his sublessor in order to exercise an option to extend, as the rights and duties of the parties are determined under the original lease. See *Coffman* v. *Huber* (1965), 13 Ohio Misc. 126, 128-129; *Realty & Rebuilding Co.* v. *Rea* (1920), 45 Cal. App. 673, 188 P. 621; and Annotation 10 A.L.R. 3d 818, 819.

The issue thus presented is: Can Dr. Oberholtz validly exercise the option to renew, as sole lessee, without joining the co-lessee, Dr. Hanlon?

In *Lamenza* v. *Shelton* (1921), 96 Conn. 403, 114 A. 96, one of the lessees attempted to exercise the option to renew without joining his "partner." The court stated, at pages 408 to 409, as follows:

"***The rights and obligations of the parties to the lease remained unchanged from the day the lease was made until it expired. The joint lessees had the privilege of renewal provided they gave notice of their intention to renew within the time limited. This privilege, granted to both, the lessor was not bound to extend to one, and thus in effect make a new lease with only one lessee, who might not by himself be financially responsible or otherwise acceptable to the lessor. One of the lessees, by exercising the option of extension, could not bind the other lessee. They must act together in order to continue to bind themselves and their lessor after the expiration of the lease. A renewed or extended lease must be in all respects the same as the original lease.***"

Accord *Gurunian* v. *Grossman* (1951), 331 Mich. 412, 416-417, 49 N.W. 2d 354, 357. See, also, 51C Corpus Juris Secundum 179, 180, Landlord & Tenant, Section 58(1), wherein it is stated that: "***A covenant to renew a lease made to more than one lessee may not be enforced by one of them for himself.***" See *Kleros Bldg. Corp.* v. *Battaglia*

(1952), 348 Ill. App. 445, 109 N.E. 2d 221; and *Bernier* v. *Benson* (1959), 21 Ill. App. 2d 532, 159 N.E. 2d 39.

We agree with the reasoning in the above cases. If the lessor enters into a lease with two individuals as lessees, the lessor is relying upon the collective ability of both lessees to pay the rent and satisfy the other duties of the lessees. Loss of one lessee would render the lessor less secure and change the nature of the bargain struck in the original lease. Under the option to renew, the lessor makes an offer to *both* lessees to extend the agreement and continue the same rights and duties. Acceptance of that offer requires that the option to renew be exercised by the lessees jointly. An exercise by one lessee of the option to renew is in the nature of a counteroffer to the lessor, which he is not bound to accept under the terms of the original lease.

We have examined *Ilgenfritz* v. *Normann* (La. App. 1974), 290 So. 2d 441 and *Schmitt* v. *Felix* (1958), 157 Cal. App. 2d 642, 321 P. 2d 473, cited by Dr. Oberholtz and distinguish them on their facts.

We further find that L & H is not estopped from requiring renewal by both lessees. Neither L & H nor its assignor, Fairlawn Square, Inc., accepted rent from Dr. Oberholtz during the holdover period. The letter from Fairlawn Square, Inc. (the original lessor), to Dr. Oberholtz does not indicate an acceptance of the renewal by Dr. Oberholtz alone. On the contrary, the content of the letter indicates a desire to renegotiate the rent and, hence, establish a new agreement.

Accordingly, the judgment of the Akron Municipal Court is hereby affirmed.

*Judgment affirmed.*

BELL, P. J., and MAHONEY, J., concur.