Mehrdad NOURI, d/b/a Royal Express Cleaners, Plaintiff–Appellant and Cross–Appellee,

v.

WESTER & COMPANY, a Colorado corporation, Defendant–Appellee and Cross–Appellant,

and

Anthony Salustri and Carl A. Salustri, d/b/a Laundro–Tech, Defendants–Appellees.

Nos. 90CA1663, 90CA1666.

Colorado Court of Appeals, Div. V.

March 26, 1992.

Rehearing Denied June 11, 1992.

Fish & Coles, D. Bruce Coles, Denver, for plaintiff-appellant and cross-appellee.

Bucholtz, Bull & Ewing, P.C., Alan H. Bucholtz, Denver, for defendant-appellee and cross-appellant.

James P. Doherty, Denver, for defendants-appellees.

Opinion by Judge REED.

Plaintiff, Mehrdad Nouri d/b/a Royal Express Cleaners, appeals from a judgment dismissing his claims for injunctive relief against the defendants, Wester & Company (Wester) and Anthony and Carl Salustri, d/b/a Laundro–Tech. Plaintiff also appeals from the judgment rendered against him on Wester's counterclaim for declaratory judgment. Wester cross-appeals the trial court's denial of its request for attorney fees. We affirm in part, reverse in part, and remand with instructions.

This suit involves the interpretation of a shopping center lease. Wester is the owner and landlord of the shopping center. Plaintiff is a tenant and operates a dry cleaners. Laundro–Tech is also a tenant of Wester and rents space in the shopping center for a laundromat and bulk dry cleaning service.

On December 15, 1983, Nouri and one Mohammed Akbarzadeh, as co-tenants, and in the name of Royal Express, executed a five-year lease with Wester. The lease was to terminate on December 31, 1988, subject to a renewal option extending the lease for a further term of five years. Pursuant to the lease, Nouri and Akbarzadeh were required to use the premises exclusively as a dry cleaners. In turn, Wester agreed it would not lease any other portion of the shopping center to another tenant who was a business competitor.

On or about May 7, 1984, Akbarzadeh withdrew from the business and assigned his interest in the lease to Nouri, who continued the dry cleaners as a sole proprietor. Notice of the assignment was provided to Western through its leasing agent. After the assignment, rental payments were made by Nouri for the balance of the term of the lease, and the payments were accepted by Wester.

Subsequently, in July of 1985, and without Nouri's consent, Laundro–Tech entered into a lease with Wester which provided that Laundro–Tech was to use the premises as a coin-operated laundromat and bulk dry cleaning. Laundro–Tech opened for business in November of 1985.

In June of 1988, Nouri by letter attempted to give timely notice of his intention to exercise the option and extend the lease for an additional term. The notification was prepared on Nouri's behalf by his attorney in accordance with the applicable provision of the lease. Shortly after notice was received, Nouri's attorney was informed that Nouri had no right to exercise the renewal option because the option had been granted to Nouri and Akbarzadeh as co-tenants.

The lease contained the following pertinent paragraphs:

7.1 The leased premises shall be used and occupied only as a dry cleaners and for no other purpose, without the written consent of the landlord. Nothing herein contained shall be construed as granting Tenant any exclusive right to sell any product or to maintain any service. However, Landlord covenants that the leased premises will be the only portion of The Shopping Center leased for the purpose for which the leased premises are leased.

15.2 Tenant shall not voluntarily, involuntarily, or by operation of law assign, transfer, mortgage or otherwise encumber all or any part of Tenant's interest in this Lease on the demised premises or sublet the whole or any part of the demised premises without first obtaining in each and every instance the previous written consent of Landlord.... Said consent shall not be unreasonably withheld.

Of particular importance in this case is the following provision:

26.1 If this Lease is terminated or canceled or assigned at any time, for any reason whatsoever, then such termination and cancellation or assignment shall automatically cancel, terminate, and extinguish any and all remaining options to renew this Lease.

Nouri filed the instant action seeking to enjoin the operation of Laundro–Tech at the shopping center. Nouri claimed Wester was liable for a continuing breach of the "exclusive use" provision in the lease by reason of having rented space in the shopping center to Laundro–Tech. Nouri claimed also that Laundro–Tech was chargeable with notice of the restriction in his favor and that such notice was sufficient to bind later tenants and enjoin them from continuing the violation.

In response to the complaint, Wester and Laundro–Tech filed their answer denying the allegations. Wester also filed a counterclaim seeking a declaration that Nouri's option to renew the lease had been terminated by the assignment of Akbarzadeh's interest to Nouri. Wester asserted too, by way of affirmative defenses, that Nouri's claims were barred under principles of *res judicata.*

The court determined that because earlier litigation culminated in dismissal of the action on procedural grounds—failure to join an indispensable party—it was not an adjudication on the merits and could not bar another action for the same cause.

Following a bench trial, the court found that Wester had violated the use restriction in the lease which prohibited any variant of dry cleaning services. Nonetheless, the court declined to enter an injunction because it concluded that Nouri had failed to established irreparable injury. In reaching this conclusion, the trial court noted that Nouri did not establish any amount of damage for the breach. Accordingly, judgment was rendered in defendants' favor dismissing plaintiff's claims pursuant to C.R.C.P. 41(a).

As to Wester's counterclaim, the court also found against Nouri. The court ruled that the assignment to Nouri violated Paragraph 26.1 of the lease and extinguished the renewal option.

After trial, Wester filed a motion requesting an award of attorney fees pursuant to a lease provision which authorized an award to the successful party in legal proceedings brought to enforce the lease. However, the trial court ruled that neither party was entitled to recover attorney fees based on the lease.

In the trial court's view, Wester's declaratory judgment counterclaim was not to enforce the lease. Instead, the court concluded that the claim was asserted to establish that the lease had expired. The court also held that Wester was not entitled to recover attorney fees incurred in defense of Nouri's action because of its determination that Wester had violated the lease.

## I.

Nouri's principal contention on appeal is that the trial court erred in ruling that the assignment from Akbarzadeh to him extinguished the option to renew the lease. We disagree.

The authorities are in conflict on the issue of whether an option to renew a lease granted to co-lessees may be exercised by only one of the lessees.

Some cases hold that absent specific language in the lease that the lease is personal in nature, a renewed option may be exercised by only one of the co-lessees for his sole behalf. *Edwards v. Tobin,* 132 Or. 38, 284 P. 562 (1930); *Annot.,* 29 A.L.R.2d 837 (1953). And, in following this rule, an assignment of one co-lessee's leasehold intent to the other does not violate the lease clause prohibiting assignment without the lessor's consent. *Spangler v. Spangler,* 11 Cal.App. 321, 104 P. 995 (1st Dist.1909).

Other authorities hold that a lease may be renewed, pursuant to a leasehold option, only in the same form as the original lease. Accordingly, an option to renew a lease made to more than one lessee may not be enforced except by its exercise by all of the original lessees. *Lamenza v. Shelton,* 96 Conn. 403, 114 A. 96 (1921); *Kleros Building Corp. v. Battaglia,* 348 Ill.App. 445, 109 N.E.2d 221 (1952); *Gurunian v. Grossman,* 331 Mich. 412, 49 N.W.2d 354 (1951). The rationale for this latter rule is that just as the landlord is entitled to look to the integrity and financial security of all of the signatories in enforcing the original lease, he is similarly entitled to the same protection in the lessee's performance of the ex-

tended term. *Bernier v. Benson*, 21 Ill. App.2d 532, 159 N.E.2d 39 (1959). Further, contrary to *Spangler*, an assignment of one lessee's interest to the other lessee does constitute a violation of the lease clause prohibiting assignment if done without the landlord's consent. *Kleros Building Corp. v. Battaglia, supra.*

We adopt the rule announced in the latter cases that an assignment of one lessee's interest to the other lessee is within the lease clause prohibiting assignment without the landlord's consent and that one co-tenant, as assignee without the landlord's consent, may not exercise a removal option solely and on his own behalf. We believe that this rule recognizes the financial realities of the transaction and the rights and obligations of the parties as expressed in the language of the lease.

Specifically, the non-assignment provision here assures that both tenants will be responsible for performing the lease obligations if the option to renew is exercised. To permit one co-tenant to exercise the option alone, in the absence of the landlord's consent, deprives the landlord of his bargain and violates the plain meaning of the lease.

■ Contrary to the assertions of Nouri, the fact that Wester may have waived conditions against assignment under Paragraph 15.2 of the lease by accepting the rent and permitting him to remain in possession does not carry over and preclude landlord from asserting a forfeiture of the option to renew under Paragraph 26.1.

Nouri relies upon cases involving general rules applicable to waiver of non-assignment clauses such as *Hughes v. Jones*, 89 Colo. 455, 3 P.2d 1074 (1931). The general anti-assignment clause here, set forth in Paragraph 15.2, grants to the landlord the right of termination for breach of the lease by re-entry upon the premises.

In contrast, the prohibition against assignment contained in Paragraph 26.1 is self-executing. It provides that: "[I]f the Lease is ... assigned ... then such ... assignment shall *automatically* cancel, terminate and extinguish" the option to renew. (emphasis supplied) Consequent-

ly, the mere acceptance of rents would not give implied consent to modification of the tenant's renewal right under the lease. *Cf. Mattas Motors, Inc. v. Heritage Homes of Nebraska, Inc.*, 749 P.2d 458 (Colo.App. 1987).

Thus, the trial court was correct in its determination that the lease had not been renewed by attempted exercise of the option.

## II.

■ Plaintiff next contends that the trial court erred in refusing to enter an injunction against defendants for violating the restriction on use set forth in the lease. We disagree.

The refusal to issue a permanent injunction will not be set aside on appeal unless the trial court has abused its discretion, and this is clearly not such a case. *Crosby v. Watson*, 144 Colo. 216, 355 P.2d 958 (1960); *American Television & Communications Corp. v. Manning*, 651 P.2d 440 (Colo.App.1982).

As counsel for Nouri properly conceded at oral argument, the right to an injunction depended upon the valid exercise of the renewal option. Thus, because of our determination that the option was not validly exercised, the court properly denied this relief. *See Crosby v. Watson, supra.*

## III.

■ In its cross-appeal, Wester contends that the trial court's denial of its motion for an award of attorney fees and costs was erroneous. We agree with Wester that it was entitled to an award of attorney fees and costs incurred in bringing the counterclaim only.

Wester claims entitlement to attorney fees based on Paragraph 28.1 of the lease which reads:

If either party hereto commences legal proceedings to enforce any of the terms and provisions of this Lease, then the successful party in any such action shall be entitled to receive, and shall receive

from the other party, a reasonable sum for attorney fees and costs of collection.

The legal fees incurred by Wester may be categorized as: 1) those attorney fees incurred in bringing the counterclaim for a declaration of rights testing the legality of Nouri's exercise of the option to renew the lease; and 2) those attorney fees Wester incurred in defending Nouri's breach of contract claims.

An award of fees in an action for declaratory relief is appropriate here because the trial court ruled in favor of Wester's right to declare a forfeiture of the option to renew. Thus, the fees Wester incurred in pursuing the counterclaim were the result of successful efforts "to enforce" the lease, as provided in paragraph 28.1.

However, as to fees incurred in defending against Nouri's action, because Wester was determined to have violated the lease, we concur with the trial court's ruling. *See Overland Development Co. v. Marston Slopes Development Co.,* 773 P.2d 1112 (Colo.App.1989). To hold otherwise would sanction a benefit to one of the parties for violating the lease.

In view of our decision upholding the trial court's ruling on the option, we need not address Wester's remaining contentions on cross-appeal.

Accordingly, the judgment of the trial court is affirmed except that portion which denied an award to Wester of attorney fees. As to this issue only, the judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

RULAND and DUBOFSKY, JJ., concur.