VICORP RESTAURANTS, INC., Appellee,

v.

James J. BADER, Appellant.

No. 97–998.

Supreme Court of Iowa.

March 24, 1999.

Donald G. Thompson and Vernon P. Squires of Bradley & Riley, P.C., Cedar Rapids, for appellant.

Thomas P. Peffer and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee.

Considered by LARSON, P.J., and LAVORATO, SNELL, TERNUS, and CADY, JJ.

LAVORATO, Justice.

This appeal arises out of a franchise agreement. The franchisee appeals from the district court's denial of his request for attorney fees on a limited remand from our court. He argues the district court should have awarded him attorney fees as the prevailing party pursuant to a fee-shifting provision in the agreement. We agree and reverse and remand for a determination of both trial and appellate attorney fees.

## I. Facts.

Vicorp Restaurants, Inc. operates approximately 100 Village Inn Restaurants. It also franchises more than 100 restaurants under the Village Inn name. James J. Bader and Lee Schmidt formed a partnership to acquire and operate a Village Inn Restaurant in Cedar Rapids. On August 4, 1986, Bader and Schmidt executed a Franchise Operating Agreement (FOA) with Vicorp concerning this restaurant.

On March 24, 1995, Vicorp sent a notice of default and right to cure to Bader. In the notice, Vicorp alleged that Bader had failed to pay monies due under the FOA and gave him thirty days to bring the account current. Vicorp included with the notice of default a statement dated March 19, 1995, claiming that he and Schmidt owed Vicorp $37,234.41. Vicorp stated that, unless that amount was paid in full and in cash within thirty days, the franchise would automatically terminate.

The $37,234.41 included thousands of dollars of royalties Vicorp alleged were due. At the time Vicorp sent out the notice, it knew the royalty payments, which it claimed were due, were only estimates. Vicorp, however, did not mention this fact in the notice. It also did not mention that it would accept a lesser amount if the amount claimed were shown to be inaccurate. The amount actually owed turned out to be roughly $32,000.

Bader was involved in negotiating a transfer of the franchise to Vince DeLong, who was amenable to curing the default. The FOA permitted a transfer of the franchise under certain conditions. One of those conditions required Vicorp's "written approval." Another provision of the FOA provided that Vicorp "shall not unreasonably withhold any consents or approvals required by this Agreement." Vicorp made several statements to DeLong that caused him to abandon his efforts to purchase Bader and Schmidt's franchise. Ultimately, however, DeLong did purchase the restaurant from Bader and Schmidt but at a price that did not include the delinquencies the partnership owed to Vicorp.

## II. Proceedings.

Vicorp sued Bader, asking for a personal judgment against him for the alleged royalty delinquencies. Bader and Schmidt had executed a security agreement in favor of Vicorp, covering inventory, equipment, and fixtures in the restaurant. In its lawsuit, Vicorp also asked for foreclosure of its security interest in this personal property.

Bader filed an answer and counterclaim. In his answer, Bader asserted an affirmative defense, alleging that Vicorp had (1) unreasonably withheld consent to the transfer of the franchise to DeLong in violation of the FOA; (2) failed to provide a proper or otherwise effective notice of default and right to cure; and (3) improperly terminated the FOA and failed to give Bader a meaningful opportunity to cure as the FOA required. In the counterclaim, Bader asked for damages based on these same three allegations.

The parties tried the case to the court. Among other things, the court found that Vicorp breached the FOA when it terminated the FOA on May 1, 1995. The court further found that Vicorp had an obligation to consider the potential transfer to DeLong and that Vicorp failed to meet that obligation in good faith. On the issue of damages, the court found as follows:

> Vicorp claimed at trial that it now calculates its damages at $52,894.18, which represents unpaid royalties, advertising fees and interest since 1995. If Vicorp had pursued and completed the transfer negotiations at the time, Vicorp's actual damages (as well as interest) would have been significantly less, because DeLong was willing to pay off at least $28,000 of the accrued delinquency. The evidence indicated that the delinquency as of May 1, 1995, was approximately $32,000—not the $37,000 Vicorp claimed at the time. Based on DeLong's testimony, the Court believes that DeLong would have paid the entire $32,000 delinquency if Vicorp had given him the opportunity. Because Vicorp wrongfully refused to consider DeLong's interest, Vicorp is not entitled to any damages, and Bader can claim as damages a set-off of any delinquencies owed to Vicorp. For purposes of the set-off claim only, the Court determines that Bader's damages are the $52,894.18 claimed by Vicorp. Bader does not have to pay any of these damages to Vicorp, nor does Vicorp have to pay any cash damages to Bader.

In the decretal part of the ruling, the court denied Vicorp's claim and upheld Bader's counterclaim for damages. In addition, this part of the ruling considered Bader's damages "in the nature of a set-off and shall forevermore discharge and acquit any obligations that" Vicorp claims are owed by Bader related to the franchise.

Following the bench trial, the parties submitted proposed findings of fact, conclusions of law, ruling and decree. As part of these submissions, both parties requested attorney fees pursuant to the following fee-shifting provision in the FOA:

> If any legal action be brought in a court of competent jurisdiction by or against [Vicorp] because of any breach of any condition or agreement herein contained on the part of either party, the prevailing party shall be awarded reasonable attorneys' fees and court costs in addition to all other relief.

Because the district court made no mention of attorney fees in its ruling, Bader filed a posttrial motion for the fees. The filing was well within the time for filing posttrial motions such as an Iowa Rule of Civil Procedure 179(b) motion. *See* Iowa R. Civ. P. 179(b) ("On motion joined with or filed within the time allowed for a motion for new trial, the findings and conclusions may be enlarged or amended and the judgment or decree modified accordingly or a different judgment or decree substituted."). The district court did not rule on the fee application before May 30, 1997, the end of the thirty-day appeal period. To protect his rights, Bader filed a notice of appeal and sought a limited remand pursuant to Iowa Rule of Appellate Procedure 12(g) to allow a district court ruling on his motion for attorney fees. We granted the limited remand.

On remand, Vicorp filed proposed amended findings of fact, conclusions of law, judgment and decree together with a brief in support of its resistance to Bader's application. Bader objected to the proposed amended findings because they were not filed in a timely manner pursuant to rule 179(b). Bader argued Vicorp's filing was nothing more than a belated attempt to change the district court's earlier ruling.

Following a hearing on Bader's motion, the district court filed a ruling in which it expressly disregarded Vicorp's proposed

amended findings of fact. The court acknowledged that Vicorp had not filed its proposed amended findings in a timely manner pursuant to rule 179(b). The court, however, stated it would consider Vicorp's brief, which contended that Bader had breached the FOA. Additionally, the court denied Bader's application for attorney fees based on a finding that both parties had breached the FOA and, thus, neither party could be considered to have prevailed.

The matter is again before us. Contrary to the district court's ruling, Bader contends he was the prevailing party and thus entitled to attorney fees.

### III. Jurisdiction.

■ Before proceeding to the merits, we address jurisdictional issues Vicorp raises. Vicorp contends Bader has failed to preserve error because his notice of appeal is within thirty days of the district court's first ruling but not within thirty days of the ruling on the application for attorney fees. Implicit in this contention is that Bader had to appeal from the ruling on the application for attorney fees to preserve error on that ruling and to give this court jurisdiction.

Vicorp ignores the procedural history of this case. Iowa Rule of Appellate Procedure 12(g), which Vicorp does not discuss, allows the appropriate appellate court pending appeal to remand the case to the district court. The rule expressly provides that "[n]otwithstanding such remand, jurisdiction of the appeal shall remain in the appellate court which ordered the remand." Iowa R.App. P. 12(g). Bader correctly argues that he properly fixed jurisdiction with this court when he filed his first notice of appeal. We retained jurisdiction during the limited remand and for that reason no second notice of appeal was necessary.

■■ Vicorp's second jurisdictional challenge is that Bader had no right to appeal the first district court ruling because it was not adverse to him. It is true that a party may appeal only from an adverse judgment and not from a finding or conclusion of law not prejudicial, no matter how erroneous.

*Wassom v. Sac County Fair Ass'n,* 313 N.W.2d 548, 550 (Iowa 1981).

■ It is also true, however, that a party who has prevailed on an immediate issue decided by the decree is not precluded from appealing if the decree also adjudicates the party's right in a manner prejudicial to that party. *Peters v. Peters,* 214 N.W.2d 151, 154 (Iowa 1974). A ruling that failed to award Bader attorney fees despite a fee-shifting provision in the underlying agreement, which the district court found Vicorp had breached, is sufficiently prejudicial to Bader to permit him to appeal from that ruling.

### IV. The Attorney Fee Issue.

In deciding the attorney fee issue, the district court applied Colorado law because the FOA provided the agreement "shall be governed by the laws of the State of Colorado." Neither party contends here that it was error for the district court to apply Colorado law, so we proceed on the premise that Colorado law governs the attorney fee issue.

In its conclusions of law, the district court stated:

> Under Colorado law, where a claim exists for violation of a contractual obligation, the party in whose favor the decision or verdict on liability is rendered is the prevailing party for purposes of awarding attorney fees. However, a litigant is not considered a prevailing party for purposes of awarding attorney fees if it breached its contractual obligations.

In support of these propositions, the court cited *Spencer Contractor, Inc. v. City of Aurora,* 884 P.2d 326 (Colo.1994), and *Nouri v. Wester,* 833 P.2d 848 (Colo.Ct.App.1992).

Apparently applying these principles, the district court concluded:

> While the Court feels that both parties presented reasonable requests for fees, the Court finds that neither is entitled to an award of fees under these circumstances. It is this Court's opinion that there was a breach of contract on both sides and that neither party could be said to have "prevailed."

Bader contends that under *Spencer* and *Nouri* he was the prevailing party. This is because, he says, in its original ruling, the district court found that Vicorp had breached the FOA and entered judgment in his favor on the liability issue. Additionally, Bader contends that, in its original ruling, the district court did not find that he had breached the FOA. Bader insists that the court's express finding in the second ruling that he breached the FOA was inconsistent with the original ruling and an unauthorized expansion of that ruling. We agree with all of these contentions.

## A. The Colorado law.

To resolve the attorney fee issue, we need to first analyze *Nouri* and *Spencer*. In *Nouri*, a tenant sued his landlord and competitor to enjoin the competitor's operation in a shopping mall under an exclusive-use provision in the tenant's lease. The landlord counterclaimed, seeking a declaration that the tenant's right to renew was terminated by assignment to the tenant of the cotenant's interest without the landlord's consent. The tenant proved that the landlord breached the lease by leasing space in the same mall to a competitor. The tenant, however, was unable to obtain any relief for the breach. The landlord prevailed on its counterclaim.

In *Nouri*, the fee-shifting provision in the lease entitled the "successful party" to attorney fees in any litigation between the parties relative to the lease. Pursuant to this provision, the court concluded the landlord was entitled to fees incurred in pursuing its counterclaim because it had been successful on the counterclaim. *Nouri*, 833 P.2d at 852. The court, however, concluded the landlord was not entitled to such fees incurred in defending against the tenant's action because the landlord was found to have violated the lease as the tenant had alleged in its complaint. *Id.*

In *Spencer*, a contractor sued a municipality for breaching a construction contract and for breaching a prior settlement agreement between the parties. The jury returned a special verdict, finding that the municipality had breached both agreements but awarded damages only on the construction contract and not on the settlement agreement. The fee-shifting provision provided for attorney fees to a prevailing party. The trial court ruled that the municipality was the "prevailing party" on the claim for the breach of the settlement agreement and awarded the municipality attorney fees, presumably because the contractor recovered no damages on this breach. The court of appeals affirmed this part of the ruling. The Colorado Supreme Court granted certiorari and posed the issue this way: "Whether the court of appeals erred in concluding that [the municipality] and not [the contractor] was a 'prevailing party' entitled to a contractual award of attorney fees when a jury found that [the municipality] had breached its contract, but awarded no damages to petitioner for that breach." *Spencer*, 884 P.2d at 328 n. 5.

In the course of its discussion, the Colorado Supreme Court in *Spencer* relied heavily on *Nouri*. The court noted that in *Nouri* the court of appeals affirmed the trial court ruling awarding the landlord attorney fees on its counterclaim because the landlord was successful in pursuing its counterclaim. *Spencer*, 884 P.2d at 330. The court further noted that the court of appeals denied the landlord fees in defending against the tenant's claim:

> Because the landlord [in *Nouri*] had violated the lease, however, the court of appeals upheld the trial court's ruling that the landlord should not be rewarded for breaching the contract by recovering attorney fees incurred in defending against the tenant's claim.

> Under *Nouri*, a litigant is not considered a prevailing party for purposes of awarding attorney fees if it breached its contractual obligations, notwithstanding the fact that it was not required to pay damages.

*Id.*

Applying *Nouri* to the facts before it, the *Spencer* court went on to say:

> The court of appeals' conclusion that [the municipality] is entitled to receive attorney fees because no damages were assessed against it is inconsistent with *Nouri*. [The municipality], like the landlord in *Nouri*, should not receive attorney fees because it

breached both the construction contract and the settlement agreement. Even though [the contractor] was not awarded damages for breach of the settlement agreement, awarding fees to [the municipality] would effectively confer a benefit upon a party for violating its own agreement.

*Id.*

The *Spencer* court went on to lay down this general rule: "We now hold that where a claim exists for a violation of a contractual obligation, the party in whose favor the decision or verdict on liability is rendered is the prevailing party for purposes of awarding attorney fees." *Id.* at 332. Applying this rule to the facts before it, the court concluded that the contractor was the prevailing party because the contractor "successfully litigated this action and the jury's verdict was entered in its favor." *Id.*

■ In addition, the court noted that [a]n absurd conclusion would otherwise result if [the municipality] prevailed on attorney fees, since [the municipality] did not prevail on any legal issue and the jury specifically entered a verdict against [the municipality] on both of the breaches. The fact that [the municipality] was not required to pay damages attributable to its breach does not constitute a favorable verdict or convert [the municipality] into a prevailing party. Therefore the jury's verdict regarding liability on the breach of contract claims, and not the jury's attribution of damages, controlled the issue of attorney fees.

*Id.* at 333. Thus, the verdict on liability *alone* determines the prevailing party. Whether the jury awards damages in fixing liability is irrelevant.

**B. Applying *Nouri* and *Spencer* to the facts.**

**1. The district court's original ruling.** In the original ruling, the district court expressly found that Vicorp had breached the FOA in two respects: (1) by terminating the FOA on May 1, 1995, and (2) by failing in good faith to consider the potential transfer of the franchise to DeLong. The court made no finding that Bader had breached the FOA.

Such a finding, of course, would have been inconsistent with the finding that Vicorp breached the FOA by terminating it. In fact, the court expressly rejected Vicorp's position that Bader and Schmidt had breached the FOA because they did not pay before May 1, 1995, all the amounts claimed due and owing in the notice of default. The court rejected Vicorp's position because (1) it was unclear how much was due and owing before May 1, 1995, and (2) Vicorp overstated the amount due in the notice of default.

Consistent with these findings, the decretal part of the ruling provided:

1. [Vicorp's] claim for damages is denied.

2. [Bader's] counterclaim for damages is upheld.

3. [Bader's] damages are to be in the nature of a set-off and shall forevermore discharge and acquit any obligations that [Vicorp] claims are owed by [Bader] related to [the franchise in question].

■ Thus, the district court found for Bader on his counterclaim and entered judgment for him on that claim. The court also found against Vicorp on its claim and entered judgment against it on that claim. Under the *Spencer* analysis, the verdict on liability alone determines the prevailing party. How the court arrives at damages is irrelevant. Because the district court's finding on liability was favorable to Bader, he was the prevailing party under *Spencer*. In addition, because Vicorp breached the FOA and because there was no finding of liability in its favor on its claim, Vicorp can claim no attorney fees as the prevailing party.

**2. The district court's ruling on remand.** On remand, the district court expressly found that both parties breached the FOA and for that reason neither party was the "prevailing party." As recalled, the district court made no express finding in its original ruling that Bader had breached the FOA.

■ Assuming for the moment that the district court could properly find at this late date that Bader breached the FOA, the court was incorrect in concluding that Bader was not a "prevailing party" under *Spencer* and

*Nouri.* This is because the district court was incorrect in interpreting *Nouri* as holding that a breaching party could *never* be a prevailing party for the purposes of awarding attorney fees. The landlord in *Nouri* recovered attorney fees in pursuing its counterclaim upon which it prevailed *even though it had breached the lease as the tenant had alleged in its complaint.* Thus, under *Spencer* and *Nouri,* Bader could at least recover attorney fees in pursuing his counterclaim because the district court had entered judgment in his favor on it.

■ The question still remains whether under the remand ruling Bader could recover attorney fees in defending against Vicorp's claim for the delinquencies. The answer depends on whether the district court could properly make an express finding that Bader breached the FOA because of the delinquencies. For reasons that follow, we conclude the district court could not properly make such a finding.

Because the original ruling contains no express finding that Bader breached the FOA, Vicorp suggests that the district court implicitly made such a finding. It did so, Vicorp says, because the court found that a delinquency existed when Vicorp issued the notice of default.

■ Vicorp's suggestion proceeds on the flawed premise that a delinquency constitutes a breach under the FOA. Under the FOA, an *uncured default* is a breach that would entitle Vicorp to terminate the franchise. The following findings in the original ruling belie any notion that the district court found such an uncured default—and therefore a breach—had occurred:

Vicorp's position on the first issue [whether Bader and Schmidt breached the FOA by not paying the amount called for in the notice] is that Bader and Schmidt violated the FOA because they did not pay Vicorp all the amounts claimed due and owing in the notice of default before May 1, 1995....

Vicorp's position on the second issue [whether Vicorp failed to consider a proposed transfer of the franchise in violation of the FOA] is that, because the franchise terminated on May 1, 1995, Vicorp had no duty to continue a dialogue with the proposed transferee, Vince DeLong.... By waiting until so late in the cure period to send the application, Vicorp made it virtually impossible for DeLong to submit an application before May 1....

Bader argues that he and Schmidt did not violate the FOA because they were denied a meaningful opportunity to cure the default, since Vicorp claimed that [they] owed an amount higher than it did. Bader believes that Vicorp could not in good faith terminate the franchise while [Bader and Schmidt] were disputing (or at least discussing) the amount owed Vicorp.

Bader also argues that Vicorp was obliged to maintain negotiations with DeLong to transfer the franchise, because DeLong was offering to cure the default and was otherwise a suitable transferee....

*The Court believes that Bader has the sounder position.* The situation between the parties from March 1995 through May 1995 involved continuing dialogue as to (1) the amounts due and owing; and (2) the possibility of a transfer of the [franchise] as a means to cure the default. [Bader and Schmidt] clearly evinced an intent to work with Vicorp to resolve the situation. [They] did not ignore the notice of default. Within the 30–day cure period, [Bader and Schmidt] asked for an accurate accounting, and also communicated to Vicorp that [they] had found a likely suitor to take over the franchise. In response, Vicorp failed to credit [Bader's and Schmidt's] statement until after the purported termination, and delayed sending a franchise application to DeLong until it was too late for DeLong to respond.

(Emphasis added.) The court went on to find that Vicorp breached the FOA when it terminated it and failed in good faith to consider the potential transfer of the franchise to DeLong.

As Bader suggests, these findings make clear that Vicorp was required to give Bader and Schmidt an opportunity to cure. Only if Bader and Schmidt failed to cure did a breach occur. Although Vicorp purported to give Bader that opportunity, it sent a notice

with an inflated delinquency amount and refused to negotiate with DeLong. Vicorp's conduct during the cure period prevented the delinquency from becoming a breach because its actions prevented the cure.

The court made an express finding that Vicorp breached the FOA; it did not make a similar finding as to Bader. We agree with Bader that the reason is obvious: The court's findings were limited to a determination that Vicorp breached the FOA. This limited finding was consistent with the balance of the district court's ruling; a finding that Bader breached the FOA was not.

Obviously, the express finding in the limited remand ruling that Bader breached the FOA is directly contrary to the court's original implicit finding that Bader did not breach the FOA. Only a timely rule 179(b) motion following the original ruling would have authorized such a contrary finding. Vicorp filed no such timely motion. For that reason, the district court was without authority on the limited remand to find that Bader breached the FOA.

We therefore conclude Bader was a prevailing party not only on the counterclaim but also on his defense against Vicorp's claim. The district court erred in concluding otherwise.

### C. Appellate attorney fees.

Bader thinks he is also entitled to an award of attorney fees on appeal. We agree. There is nothing in the FOA that prohibits such fees. *See Federal Land Bank of Omaha v. Woods*, 480 N.W.2d 61, 69 (Iowa 1992) (holding that bank was entitled to attorney fees on appeal when agreement did not prohibit such fees).

### V. Disposition.

In sum, we conclude the district court erred in concluding that Bader was not the prevailing party under Colorado law. We therefore reverse and remand. On remand, the district court shall hold an evidentiary hearing on trial and appellate attorney fees and shall fix those fees.

**REVERSED AND REMANDED WITH DIRECTIONS.**