**IN THE COURT OF APPEALS OF IOWA**

No. 22-0368
Filed March 8, 2023

**RUSSELL FRANCIS LENSING,**
        Plaintiff-Appellee/Cross-Appellant,

**vs.**

**ROGER GALE LUNDTVEDT,**
        Defendant-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Winneshiek County, Laura Parrish,

Judge.


        Roger Lundtvedt appeals the district court ruling ordering specific

performance of a real estate contract.  Russell Lensing cross-appeals the court's

denial of his claim for breach of contract.  **AFFIRMED ON APPEAL AND**

**REMANDED; AFFIRMED ON CROSS-APPEAL.**


        George A. Cady III of Cady & Rosenberg Law Firm, P.L.C., Hampton, for

appellant.

        Jeremy L. Thompson of Putnam, Thompson & Casper, P.L.L.C., Decorah,

for appellee.


        Heard by Bower, C.J., and Badding and Buller, JJ.

**BOWER, Chief Judge.**

Roger Lundtvedt appeals the district court ruling ordering specific performance of a real estate contract. Russell Lensing cross-appeals the court's denial of his claim for breach of contract. We affirm the district court's rulings on specific performance and Lensing's breach-of-contract claim and remand for the district court to set a new closing date.

**I. Background Facts & Proceedings.**

In the spring of 2018, Lensing approached Lundtvedt about purchasing real property from him; the property discussed was a 180-acre farm, with a majority of tillable acres and an on-site residence. After Lundtvedt initially indicated he was not interested in selling, the parties continued to talk. On July 11, Lundtvedt wrote notes about the sale, including the potential for a 1031 exchange.[1] On July 31, Lundtvedt and Lensing executed a written purchase agreement for property. The document—which was prepared by Lensing and his banker to arrange a loan for the purchase—stated in whole:[2]

> Purchase agreement
> Date: 7/31/2018
> This is between Roger Lundvedt [sic] and Russ Lensing
> For the purchase of 180 acres with the building site included.
> Section 26, 34, 35 Lincoln Township, Winneshiek County.
> Purchase price $2,000,000.00
> Down Payment $200,000.00
> Taxes paid up to possession of property. (seller cost)
> Abstract brought up to date and title opinion (seller pays)
> Closing date to be determend [sic]
> Roger Lundvedt [signature]
> Russ Lensing [signature]

---

[1] Section 1031 of the Internal Revenue Code allows an exchange of real property without paying taxes on any gain in value of the sold property.
[2] The date, down payment amount, closing date notation, and signatures were handwritten on the document, the remainder was typewritten.

That same day, Lensing provided a check to Lundtvedt for the $200,000 down payment.

On August 31, Lundtvedt provided notice to the farm's tenant the tenancy would expire March 1, 2019. In early September, Lundvedt bid on property in Minnesota, anticipating a section 1031 exchange. In late September or early October, he told Lensing he wished to close the sale on December 1. On October 5, Lundtvedt directed the Farm Service Agency office to "give Russel Lensing any information he needs including form 578."[3] On October 8, Lundtvedt ordered an abstract for the property, stating a closing date of December 1.

On October 9, Lensing gave Lundtvedt a note stating he would not agree to close on December 1. Lensing further stated Lundtvedt had added a new term requiring acceptance of the property "as is" and he rejected the additional term. The note then stated, "Therefore I do not believe we have an agreement."

In mid-November, Lundtvedt provided the updated abstract to Lensing. Lensing took the abstract to his attorney but did not have a title opinion prepared due to the uncertainty of the contract. Lensing returned the abstract to Lundtvedt.[4]

Lensing's attorney sent a letter to Lundtvedt's attorney on November 27 stating a December 1 closing date was not agreed to; the letter noted the parties

---

[3] Form 578 is a crop acreage report submitted to the Farm Service Agency with information describing the crops grown on an acreage and their intended use. The form is required for eligibility for many federal farm programs. *See Crop Acreage Reports*, U.S. Department of Agriculture, https://www.farmers.gov/working-with-us/crop-acreage-reports (last visited Feb. 21, 2023).

[4] Lensing testified he returned the abstract to Lundtvedt's significant other.

had discussed problems with the property's septic system and well and outlined each party's proposed price reduction.[5]

The closing did not occur on December 1. Lundtvedt did not have the seller's required closing documents prepared, i.e., deed, declaration of value, and groundwater hazard statement.[6] Lundtvedt testified he had the well and septic tank tested before his preferred December 1 closing date, but he did not provide any evidence of such testing being completed. He testified, "There was no point . . . to have that done when there was no money from [Lensing] and he brought the abstracts back." Lensing did not tender the remaining payment or take possession of the property, nor had Lundtvedt removed his equipment and personal items from the property. On December 3, Lundtvedt closed on his new property in Minnesota.

On January 10, 2019, Lundtvedt's attorney sent a letter to Lensing stating Lundtvedt intended to move forward with the sale, rejecting Lensing's proposed price reduction, and asking for a closing date.[7] The letter stated Lundtvedt would deposit the earnest money check on January 18. Lundtvedt cashed Lensing's down payment check on January 29.

---

[5] Lundtvedt proposed a $10,000 price reduction; Lensing requested a $100,000 reduction to take the property as-is.

[6] Iowa Code section 558.69 (2018) requires a seller or seller's agent sign a groundwater hazard statement identifying locations and status of wells, septic tanks, other underground storage tanks as a prerequisite to the recording of a deed.

[7] Yet, at trial Lundtvedt testified he thought the deal was off as of December 1, 2018. He testified he did not know why his attorney wrote the January letter to Lensing.

Lensing wanted to close on March 1, and his banker testified they had the financing ready to pay the balance of the purchase price. The septic system question had yet to be resolved, and Lensing had not had a title opinion prepared. Lundtvedt again did not provide the seller's documents, his equipment was still on the property, and no closing occurred.

Lensing and Lundtvedt had a phone call about the sale on March 12. Lundtvedt indicated that if Lensing wanted to farm the property that year, he would have to pay rent until the sale closed.[8] On March 15, Lensing sent Lundtvedt a letter clarifying his position, "[G]ive me my $200,000.00 back by April 1, 2019 and we call off the sale of the property. Or we go to court and I sue you for failure to deliver the property in a timely manner, and there is no closing date."

On March 20, Lundtvedt's attorney sent a letter to Lensing stating, "if you are now demanding to cancel the July 31, 2018, Purchase Agreement it is [Lundtvedt]'s contention that you are in breach of the Purchase Agreement and have therefore forfeited the down payment."

On May 2, Lensing filed a petition claiming breach of contract by Lundtvedt for failure to close on the property and perform necessary obligations under the purchase agreement. Lensing also stated a claim of conversion based on Lundtvedt refusing to return the down payment. Lensing requested damages including the return of the down payment with interest, court costs, and any "just and appropriate" relief.

---

[8] Lundtvedt did not set a dollar amount and would not count the rent towards the purchase price.

Lundtvedt answered and counterclaimed for breach of contract for not paying the balance of the purchase price, breach of implied covenant of good faith and fair dealing claim due to the delay in closing that resulted in Lundtvedt's inability to complete the 1031 exchange, specific performance of the purchase agreement, and promissory estoppel/detrimental reliance to be remedied by specific performance.

In November 2020, Lensing, via his attorney, offered to purchase the real estate and property on the terms of the contract, specifying terms not found in the original purchase agreement:

> [Lundtvedt] providing acceptable well and septic tests showing passing results, [Lundtvedt] providing clean title to the real estate, with [Lensing] having a title opinion prepared, any personal property to be removed from the real estate and residence, and [Lensing] having a right to inspect the residence simply to confirm its condition since it's been over three years since he was last in it and does not believe anyone has resided in it on any regular basis. [Lensing] would be looking at a March 1, 2021 closing date to effectuate finalizing this transaction.

After some additional haggling, Lundtvedt rescinded his attorney's authority to negotiate and indicated no offers were to be made to complete the sale.

In January 2021, Lensing filed a motion for leave to amend his petition and answer, which the court granted. He requested the court order specific performance for the sale of real estate according to the purchase agreement, as requested in both his and Lundtvedt's petitions. He also sent an additional letter to Lundtvedt that he was "willing and able to complete the current purchase of the real estate that is subject to the contract."

Lundtvedt did not amend his previous answer or counterclaim in response to Lensing's amended petition and answer. Instead, in February his attorney sent

a letter stating Lundtvedt could not close a sale by the requested date, Lensing had breached the agreement, and Lundtvedt intended to keep the down payment as damages.

On March 29, Lensing filed a motion for summary judgment. Lensing requested the court find Lundtvedt breached the purchase agreement and order specific performance on the sale. Lundtvedt resisted summary judgment, alleging a fact question existed and requesting the motion be dismissed.[9] The district court found "genuine issues of material fact affecting the elements of Lensing's breach of contract and specific performance claims" existed and denied summary judgment.

A bench trial was held on July 9. The court heard testimony from Lensing, Lundtvedt, their significant others, Lensing's banker, and a person who had previously rented land from Lundtvedt.

In January 2022, the court issued its ruling. It found neither party clearly rejected the contract by giving notice they would not perform. Because the written contract did not specify a closing date, the court found both Lundtvedt's preferred December 1 closing and Lensing's preferred March 1 closing dates "could be considered reasonable in the context of a sale of farmland," and the lack of a closing date was not a fatal defect to the contract. The court observed, although there were times over the course of 2018 and 2019 where the contract could have been rescinded, the parties continued negotiating and vacillating between considering the contract valid and rescinded. The court ruled, "There is an inherent

---

[9] Lundtvedt's resistance did not rescind his original request for specific performance of the contract.

acknowledgement that a valid contract existed for both parties to seek specific performance. Both parties seek specific performance and specific performance they shall have, as the court finds it to be an appropriate equitable remedy based on the record in this matter." The court ordered the parties close the sale according to the terms of the contract, clarified the duties of each party under generally accepted principles of farm/residential real estate sales, and assigned any septic update costs to Lensing. The court denied both parties' claims for breach of contract, Lensing's conversion claim, and Lundtvedt's claims of breach of implied covenant of good faith and fair dealing and promissory estoppel. The court did not award either party monetary damages.

Lundtvedt appeals the order of specific performance. Lensing cross-appeals the dismissal of his breach-of-contract claim and argues an alternative remedy should we deny specific performance and his contract claim.

**II. Standard of Review.**

When "breach-of-contract claim[s] and request for specific performance were tried in equity[,] . . . our standard of review is de novo." *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 684 (Iowa 2020). This matter was filed and tried in equity.

**III. Analysis.**

Lundtvedt appeals the court's order for specific performance due to Lensing's refusal to close on December 1, 2018, his failure to tender performance before filing suit, and due to the uncertainty of the contract terms.[10]

---

[10] Lundtvedt did not appeal the ruling dismissing his breach-of-contract claims.

Lensing cross-appeals the court's denial of his breach-of-contract claim following Lundtvedt's refusal to close on March 1, 2019, for which he seeks lost profits and other consequential damages.

*A. Grounds for Appeal.* Even though Lundtvedt sought specific performance below, on appeal he contests the court's order for it, and in his reply brief he asserts for the first time that he abandoned his specific-performance claim by not offering any evidence to support it at trial.[11]

When Lensing amended his petition to add a request for specific performance, Lundtvedt chose not to amend his answer to address the new claim or amend his cross-claims. In filing for summary judgment, Lensing requested specific performance; Lundtvedt's resistance stated an issue of material fact existed if a contract still existed but did not assert specific performance was not a desired result. Lensing submitted one of Lundtvedt's interrogatory answers as a summary judgment exhibit, which stated, "The seller stands ready to preform and is not in bre[a]ch. The buyer has no reason not to perform." At trial, Lundtvedt did not argue in support of specific performance and testified repeatedly he did not consider there to be any deal after December 1, 2018. However, at no time did he inform the court—either verbally or by written motion—he withdrew the specific-performance claim from his petition.

A party may only appeal from an adverse judgment and not from a non-prejudicial finding or conclusion of law. *Vicorp Rests., Inc. v. Bader*, 590 N.W.2d 518, 521 (Iowa 1999); *cf. Gartin v. Farrell*, No. 13-0061, 2014 WL 69662, at *5

---

[11] Even in his reply brief, Lundtvedt does not abandon his promissory estoppel claim—though the requested remedy for that claim was specific performance.

(Iowa Ct. App. Jan. 9, 2014) ("[U]nder Iowa law, if a party poses his or her requests for relief in the alternative, and the court accepts one of the alternatives, the court's ruling is not adverse."). A party cannot "predicate error upon the court's doing the very thing they requested the court to do. Especially is this true in the absence of any showing of prejudice." *State v. Beckwith*, 53 N.W.2d 867, 869 (Iowa 1952). Courts are not mind readers. Where Lundtvedt never informed the trial court he wished to dismiss his claim for specific performance,[12] and where both parties requested specific performance, we will not find the court's order of specific performance adverse to either party. Because Lundvedt prevailed on his specific-performance claim, he cannot now challenge the relief he requested. We affirm the district court's order for specific performance of the real estate contract. We remand for the district court to set a new closing date after procedendo issues.

*B. Breach of Contract Cross Appeal.* On cross-appeal, Lensing asserts the district court should have awarded him breach-of-contract damages in addition to the order for specific performance. Specifically, he seeks consequential monetary damages in the amount of home rental payments, lost farming profits, and lost government payments for farmers.

> Generally, to establish a claim for a breach of contract, the [complaining party] must show
> > (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract;

---

[12] Lundtvedt's failure to inform the court of his desire to abandon his specific-performance claim also implicates error preservation issues. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002); *see* Iowa R. App. P. 6.903(2)(g)(1) (requiring a party address how an "issue was preserved for appellate review, with references to the places in the record where the issue was raised and decided").

(4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 706 (Iowa 2016) (citation omitted). The district court held, "neither party was previously ready to perform and therefore they both remain obligated to perform"—in other words both parties' breach-of-contract claims failed on the third step. The court found,

> Prior to December 1, 2018, Lundtvedt never tendered required statements under Iowa Code [chapter] 558 or otherwise provided final closing documents or proof he was prepared to close. This remained the case on March 1, 2019. Lensing never tendered full payment or provided final closing documents or proof he was prepared to close by March 1, 2019. No title opinion has ever been prepared, regardless of who was to pay for it. Instead, both parties have simply dug their heels in, refusing to acknowledge responsibility for either of their respective fault in the creation of this situation.

Lensing argues he "was ready and willing to close," but without Lundtvedt's performance his failure to actually tender payment is excused. On our examination of the record, we concur with the district court's analysis of the situation. We affirm the court's denial of Lensing's breach-of-contract claims.

**AFFIRMED ON APPEAL AND REMANDED; AFFIRMED ON CROSS-APPEAL.**